# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 24-71088-SCS |
| 1333 BAECHER LANE VA, LLC, | ) | |
| | ) | |
| *Debtor.* | ) | Chapter 7 |
| | ) | |

## MEMORANDUM OPINION

This matter came before the Court for a continued hearing on April 3, 2025, upon the Application Seeking Approval of Compensation and Reimbursement of Expenses of Debtor's Bankruptcy Counsel (the "Application for Compensation" or "Application") filed by Kevin A. Lake, Esquire, on January 15, 2025, and the objection thereto filed by the Debtor via the debtor designee, Marc A. Cox, on March 12, 2025. At the conclusion of the continued hearing, the Court took this matter under advisement. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408(1) and 1409(a). Upon consideration of the evidence, arguments presented by counsel and Mr. Cox on behalf of the Debtor at the original and continued hearings, and the pleadings submitted, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### I. Procedural History

The Debtor, by its counsel Mr. Lake, commenced the above-captioned case by filing a voluntary petition on May 20, 2024, under Subchapter V of Chapter 11 of the United States

Bankruptcy Code.[1] ECF No. 1, Voluntary Petition. The Debtor's principal asset at the time of filing was residential real property and improvements thereon located at 1333 Baecher Lane, Norfolk, Virginia (the "Property"). ECF No. 18, Debtor's Schedules and Statements, at 8 (Schedule A/B: Assets – Real and Personal Property), filed June 3, 2024; ECF No. 31, Debtor's Schedules and Statements, at 7 (Amended Schedule A/B: Assets – Real and Personal Property), filed July 2, 2024.[2] Marc A. Cox is the sole member of the Debtor. ECF No. 1, at 6-8 (Debtor's Resolution approving bankruptcy filing), 12 (List of Equity Security Holders), 23 (Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy); *see also* ECF No. 31, at 23 (Amended Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy). Mr. Cox was listed as a codebtor on the secured claim on the Property owed to HOF I Grantor Trust 5. ECF No. 18, at 11 (Schedules D: Creditors Who Have Claims Secured by Property), 16 (Schedule H: Codebtors); *see also* ECF No. 31, at 10, 16 (Amended Schedules D: Creditors Who Have Claims Secured by Property, and H: Your Codebtors). By the Order of Designation entered May 22, 2024, the Court designated Mr. Cox as debtor designee and ordered him to perform the duties imposed upon the Debtor by the Bankruptcy Code. ECF No. 5. The United States Trustee appointed Donna J. Hall, Esquire, as the Subchapter V Trustee on the same date. ECF No. 6.

---

[1] The above-captioned case was converted to a proceeding under Chapter 7 pursuant to the Order of Conversion of Chapter 11 to Chapter 7 entered on February 6, 2025, following a hearing held on that date at which the Court granted the Motion to Dismiss or Convert filed by the United States Trustee on January 28, 2025. ECF No. 78, Motion to Dismiss or Convert; ECF No. 92, Order of Conversion of Chapter 11 to Chapter 7; *see also* ECF No. 108, Supplemental Order Converting Case to Proceeding Under Chapter 7, entered Feb. 13, 2025; ECF No. 143, Transcript of Feb. 6, 2025 hearing, at 22-50, 59-64, 67-73. Mr. Cox stated on the record that he did not have an opinion or position on whether the Court should dismiss or convert the above-captioned case. ECF No. 143, Transcript of Feb. 6, 2025 hearing, at 12, 44, 48, 62.

[2] By order entered May 5, 2025, the Chapter 7 Trustee was permitted to sell the Property for the benefit of the estate. ECF No. 161, Order to Sell Debtor's Real Estate, entered May 5, 2025. The Property was sold to buyers who originally contracted with the Debtor while the case was still pending as a Chapter 11 Subchapter V case. ECF No. 161, ¶ 3.

Mr. Lake filed the Debtor's Application to Employ Bankruptcy Counsel (the "Application to Employ") on May 25, 2024, which requested the Court's authorization to employ Mr. Lake and his firm, McDonald, Sutton & DuVal, PLC (the "McDonald Firm"), as bankruptcy counsel pursuant to 11 U.S.C. § 327(a) and Federal Rule of Bankruptcy Procedure 2014. ECF No. 12 (hereinafter, "Application to Employ"). No objections to the Application to Employ were filed by either the Subchapter V Trustee, the United States Trustee, or any other creditor or party in interest, and the application was approved by order entered June 18, 2024. ECF No. 25. As counsel for the Debtor, Mr. Lake filed numerous pleadings and other required documents,[3] including a Chapter 11 Subchapter V plan, a response to a Motion for Relief from Stay, and an Application to Employ Real Estate Agent.[4] On January 9, 2025, Mr. Lake filed a Motion for Leave to Withdraw as Counsel, which was granted by order entered February 7, 2025, following no objections[5] thereto and a hearing held on the matter on February 6, 2025. ECF No. 75; ECF No. 100.

---

[3] *See, e.g.*, ECF No. 24, Monthly Operating Report for Small Business Under Chapter 11, filed June 17, 2024 (for the time period of May 20-31, 2024); ECF No. 36, Monthly Operating Report for Small Business Under Chapter 11, filed July 24, 2024 (for the month of June 2024). Mr. Lake also filed monthly operating reports for July, August, September, and October 2024. ECF Nos. 42, 55, 66, 72.

[4] *See* ECF No. 37, Plan of Liquidation for Small Business Under Chapter 11, filed Aug. 19, 2024; ECF No. 54, Response of Debtor to Motion for Relief from the Automatic Stay, filed Sept. 17, 2024; ECF No. 67, Notice and Application to Employ Real Estate Agent, filed Nov. 13, 2024. Other notable pleadings filed by Mr. Lake include the Debtor's Motion to Sell Real Property Free and Clear of Liens and Claims of Interest (ECF No. 38, filed Aug. 20, 2024) and Debtor's Amended Motion to Have Heard on Shortened Notice Its Motion to Sell Real Property Free and Clear of Liens and Claims of Interest (ECF No. 43, filed Aug. 21, 2024), both of which were withdrawn on August 30, 2024 (ECF Nos. 48, 49).

[5] On behalf of the Debtor, Mr. Cox represented his desire that the Court grant the Motion for Leave to Withdraw as Counsel, in part due to his belief that Mr. Lake sought "excessive compensation." ECF No. 143, Transcript of Feb. 6, 2025 hearing, at 4, 5, 62; *see also id.* at 11, 12.

While the Motion for Leave to Withdraw as Counsel was pending, Mr. Lake filed the Application for Compensation, along with an accompanying exhibit, on January 15, 2025. ECF No. 76 (hereinafter, "Application for Compensation"). The Application first came on for hearing on February 6, 2025. *See* ECF No. 143, Transcript of Feb. 6, 2025 hearing (hereinafter Feb. Tr.), at 2, 50. Mr. Lake, the Subchapter V Trustee, and counsel for the United States Trustee appeared. *Id*. at 2, 50, 54. Mr. Cox appeared telephonically with the permission of the Court. *Id*. at 2. No objections to the Application were filed prior to the hearing. *Id*. at 51, 57, 66. At the hearing, Mr. Lake summarized his firm's representation of the Debtor. *Id*. at 52-54. Neither the Subchapter V Trustee nor counsel for the United States Trustee objected to the Application. *Id*. at 54. On behalf of the Debtor,[6] Mr. Cox informally objected to the Application, in part because following Mr. Lake's withdrawal as counsel,[7] the Debtor was unrepresented. *Id*. at 54-56. Mr. Cox also objected on the basis that Mr. Lake billed the Debtor excessively for his services*. Id*. at 55-56, 62; *see also id.* at 66. In response, Mr. Lake highlighted his experience as a bankruptcy practitioner during the last thirty (30) years and the reasonableness of his fees. *Id*. at 57-59. The Court took the matter under advisement, provided Mr. Cox thirty (30) days to file a formal, written objection on behalf of the Debtor, and provided Mr. Lake fifteen (15) days thereafter to reply to Mr. Cox's objection. ECF No. 106, Order Regarding Debtor's Counsel's Application for Pre-Conversion Compensation and Reimbursement of Expenses, entered Feb. 11, 2025; *see also* Feb. Tr. at 67.

---

[6] For the avoidance of doubt, all references herein to statements of any type made by Mr. Cox, whether orally or in writing, shall mean statements made by him on behalf of the Debtor, even if not explicitly noted as such.

[7] The Court orally granted the Motion for Leave to Withdraw as Counsel prior to hearing the Application for Compensation. Feb. Tr. at 64.

On behalf of the Debtor, Mr. Cox filed an objection to the Application on March 12, 2025,[8] along with an accompanying exhibit. ECF No. 118 (hereinafter, "Objection"). Mr. Lake responded to the Objection on March 27, 2025, and filed exhibits thereto on March 28, 2025. ECF No. 124, Applicant's Response to Objection to Application Seeking Approval of Compensation and Reimbursement of Expenses of Debtor's Bankruptcy Counsel (hereinafter, "Response"); ECF No. 125, Exhibits to Applicant's Response to Objection to Application Seeking Approval of Compensation and Reimbursement of Expenses of Debtor's Bankruptcy Counsel (hereinafter, "Exhibits to Response"). Upon review of the Objection, the Court reset the Application for hearing for April 3, 2025. Mr. Lake, the Chapter 7 Trustee, and counsel for the United States Trustee appeared in person at the hearing. ECF No. 144, Transcript of Apr. 3, 2025 hearing (hereinafter, "Apr. Tr."), at 3. Mr. Cox again appeared telephonically on behalf of the Debtor.[9] *Id*. Mr. Lake presented expert testimony by Paula Beran, Esquire; testified on his own behalf; and offered exhibits, which were admitted by the Court. *See id*. at 11, 23-24, 47. Mr. Cox cross-examined both Ms. Beran and Mr. Lake but offered no documentary evidence or other testimony on behalf of the Debtor or its Objection. *See id.* at 41, 55. Neither the United States Trustee nor the Chapter 7 Trustee objected to the Application following the introduction of

---

[8] The Court finds the objection filed on behalf of the Debtor to be timely pursuant to Federal Rules of Bankruptcy Procedure.

[9] When considering the request made by Mr. Cox to appear telephonically, the Court considered the proximity of Mr. Lake's withdrawal as counsel for the Debtor and that both Mr. Cox and Mr. Lake agreed to the withdrawal. The Court also recognized that Mr. Cox is a sophisticated businessman who is the sole member of the Debtor and who ably appeared at the prior hearing. *See, e.g.*, Feb. Tr. at 37. While the Court would ordinarily require a debtor designee to appear in person, requiring Mr. Cox to do so or to obtain substitute counsel at this juncture would not have favored expedient resolution of this matter, particularly since Mr. Cox evidenced no efforts to obtain counsel between the February and April hearings, despite his reassurances to the contrary. *Id*. at 14.

evidence. *Id*. at 63. Mr. Lake and Mr. Cox made closing arguments. *See id*. at 61-69. At the conclusion of the hearing, the Court took this matter under advisement. *Id*. at 69.

After taking the Application for Compensation under advisement, the Chapter 7 Trustee sought approval to sell the Property. ECF No. 154, Amended Motion to Sell Debtor's Real Estate, filed Apr. 25, 2025.[10] While no written objections were filed to the trustee's motion, Mr. Cox raised an oral objection at the hearing regarding the payment of real estate commissions, which the Court overruled. ECF No. 161, Order to Sell Debtor's Real Estate, entered May 5, 2025, at 4-5. The Court found that the proposed sale was in the best interests of the bankruptcy estate and granted the motion. *Id.* at 5. Pursuant to the Chapter 7 Trustee's Amended Report of Sale, following receipt of a refund for the overpayment of real estate taxes, he currently holds proceeds from the Property's sale of $60,511.52. ECF No. 167, filed June 17, 2025.

## II. Findings of Fact

### A. The Application for Compensation Generally and Objection Thereto

Upon consideration of the record, the Court makes the following findings of fact. As set forth above, the Application to Employ was approved by the Court without objection. ECF Nos. 12, 25. Among the customary disclosures in such pleading, the Application to Employ set forth compensation rates for both attorneys and support staff, including Mr. Lake's rate of $495.00 per

---

[10] The Court entered an earlier order approving the Chapter 7 Trustee's original request to sell the Property on April 4, 2025. ECF No. 129, Order to Sell Debtor's Real Estate. Mr. Cox did not oppose the sale when first requested by the trustee. *Id*. at 4. The Chapter 7 Trustee thereafter filed an Amended Motion to Sell Debtor's Real Estate to correct an error made in the original motion regarding commissions for the respective parties' real estate professionals. *Compare* ECF No. 116, Motion to Sell Debtor's Real Estate, filed Mar. 4, 2025, *with* ECF No. 154. The original sale order was vacated upon the granting of the Amended Motion to Sell Debtor's Real Estate. ECF No. 160, Order Vacating Order to Sell Debtor's Real Estate, entered May 5, 2025.

hour. Application to Employ ¶ 7. The Retention Agreement,[11] attached to the Application to
Employ as Exhibit A and incorporated therein by reference, also plainly discloses Mr. Lake's
$495.00 per hour rate. Application to Employ, Exhibit A at 4. Mr. Cox's acceptance of this rate is
demonstrated by his written endorsement at the end of the Retention Agreement. *Id*. at 6.[12] Mr.
Cox acknowledges that he signed the Retention Agreement. Apr. Tr. at 68.

The pending Application was served on the United States Trustee, the Subchapter V
Trustee, the Debtor, and all creditors and parties via electronic means or first-class U.S. Mail.
Application for Compensation, Service List; ECF No. 77, Notice of Application for
Compensation and Reimbursement of Expenses of Debtor's Counsel and Hearing Theron, filed
Jan. 15, 2025. The Application seeks an award of $38,823.50 in attorney fees and $1,155.75 in
out-of-pocket expenses incurred on behalf of the Debtor from May 20, 2024, through January 15,
2025 (the "Compensation Period"), for a total request of $39,979.25.[13] Application ¶¶ 14-17. The
Application categorizes the services performed by the McDonald Firm and provides a
breakdown of the amount of time spent on each service category, which corresponds

---

[11] For clarity, the Retention Agreement is the same document referred to in the Application to
Employ as "Bankruptcy Engagement Letter." Application to Employ ¶ 5.

[12] The endorsed Retention Agreement was also attached to the Disclosure of Compensation of
Attorney for Debtor filed by Mr. Lake on May 25, 2024. ECF No. 11. Both the United States
Bankruptcy Code and Federal Rules of Bankruptcy Procedure require an attorney representing a
debtor to file a Disclosure of Compensation of Attorney for Debtor, which disclosure must detail
"the compensation paid or agreed to be paid, . . . for services rendered or to be rendered in
contemplation of or in connection with the case by such attorney, and the source of such
compensation." 11 U.S.C. § 329(a); *see* Fed. R. Bankr. P. 2016(b); Local Bankruptcy Rule 2016-
1(B).

[13] The Application notes that prior to filing the petition, Mr. Lake applied a portion of the
retainer to the payment of attorney fees and expenses incurred during the prepetition
representation of the Debtor. Application, at 3 n.3. The Application further notes that $657.00 of
the prepetition retainer remained unapplied as of the petition date. *Id*. The remainder of the
prepetition retainer was also disclosed in the Disclosure of Compensation of Attorney for Debtor.
*Id*. (citing ECF No. 11).

mathematically and topically to the attached time records. *Compare id*. ¶¶ 18, 20, *with* Application for Compensation, Exhibit A, Time Records (hereinafter, "Time Records"). Mr. Lake and a legal assistant provided services during the Compensation Period totaling 86.9 hours. Application ¶ 18. Mr. Lake billed 74.90 hours at $495.00 per hour; 4.8 hours at $247.50 per hour; and did not bill for four (4) hours.[14] *Id.* Mr. Lake's legal assistant billed 3.2 hours at $175.00 per hour. *Id*. The McDonald Firm provided various services to the Debtor regarding case administration, preparation of the Chapter 11 Subchapter V plan, responding to and resolving a Motion for Relief from Stay, fee and employment applications, the attempted sale of the Property, and additional related matters. *Id*. ¶ 20(A)-(I). The McDonald Firm's tasks included attending hearings; preparation, filing, and review of pleadings; legal research and analysis; negotiations on behalf of the Debtor; and correspondence with Mr. Cox and other creditors and parties in interest to the case. *See id*. The bulk of the time was spent on case administration-related activities, including fulfilling monthly reporting duties, preparation of schedules and statements, and issues related to the debtor in possession business operations. *Id.* ¶ 20(B)*.* The second largest category of time billed included representing the Debtor in connection with negotiations regarding the possible sale of the Property, including contract drafting, legal research, and the filing of a motion seeking Court approval of the sale. *Id.* ¶ 20(H).

The sole objection to the Application is lodged by the debtor designee, Mr. Cox, on behalf of the Debtor. In the Objection, Mr. Cox attaches and adopts a letter written by John D. Lamey III, Esquire, a bankruptcy attorney licensed in Minnesota since October 2001. Objection*,* at 1; Exh. A, Letter dated Mar. 5, 2025, from John D. Lamey III, Esq. to Marc A. Cox

---

[14] The hours billed at $247.50 per hour and the hours for which Mr. Lake did not bill the Debtor correspond to the time records. *Compare* Application ¶ 18, *with* Time Records, at 5, 12, 17, 22, 29, 34, 35.

(hereinafter, "Letter"), at 1. Mr. Lamey is not a member of the Bar of this Court, nor is he a member of either the United States District Court for the Eastern District of Virginia or the Virginia State Bar.[15] Mr. Lamey represents he has "filed over 5,500 personal and business bankruptcies" in Minnesota and in the Western and Eastern Districts of Wisconsin, where he is also licensed to practice. Letter, at 1. Since 2020, Mr. Lamey indicates he has filed seventeen (17) cases under Chapter 11 of the Bankruptcy Code, including one (1) in 2024 for another of Mr. Cox's corporate entities. *Id*. at 1-2. Mr. Lamey claims that he reviewed invoices dated July 31, 2024, and November 30, 2024,[16] as well as "the docket and certain pleadings and orders." *Id*. at 2. His letter is not accompanied by an affidavit, declaration, or other sworn statement under oath. Based on the representations of the parties, it does not appear that Mr. Lamey had any direct communication with Mr. Lake regarding the fees sought. Mr. Lamey makes specific comment on nineteen (19) of the 160 total time entries (hereinafter, the "Contested Entries") included in the Application for Compensation. *See generally id.* Mr. Lamey generally asserts that the amount of time Mr. Lake billed is excessive; suggests Mr. Lake engaged in inefficiencies when drafting certain documents; and proclaims that Mr. Lake should have delegated certain tasks to staff with lower billing rates. *See id*. at 2-3.

Mr. Lake's Response to the Objection notes that the Contested Entries discussed in the Letter total 18.3 hours, equating to only $9,058.50 in fees. Response ¶ 14. Mr. Lake responds to Mr. Lamey's comments about each entry, noting that for some entries, the amount of time devoted was necessary due to the unique nature and circumstances of the case, difficulties in

---

[15] *See* Virginia State Bar Lawyer Directory, https://www.vsb.org/Site/Shared_Content/Directory/va-lawyer-directory.aspx (last accessed Nov. 4, 2025).

[16] The time records attached to the Application contain invoices dated July 31, 2024; November 30, 2024; and January 15, 2025. Time Records, at 3, 16, 29.

communicating with the Debtor's lender, and in some instances because of Mr. Cox's delays in providing Mr. Lake with necessary documents and information. *See generally* Exhibits to Response, Exh. 1, Time Entries Flagged in Objection and Applicant's Responses to Cox's Comments Regarding the Flagged Entries (hereinafter, "Exhibit 1 to Response"). In support of the time represented by the Contested Entries, Mr. Lake references several cases filed in this Court under Subchapter V of Chapter 11 where the Court approved attorney applications for compensation that set forth comparable time entries and rates. *See generally id*. Mr. Lake's specific response to each Contested Entry is more fully discussed *infra*.[17] Prior to the April 3, 2025 hearing, Mr. Lake filed additional exhibits in support of his Application. *See* ECF No. 127, Applicant's Proposed Exhibit List and accompanying exhibits (hereinafter, "Hearing Exhibits"), filed Apr. 2, 2025.

### B. Hearing on Application for Compensation

Mr. Lake called Paula Beran, Esquire, a bankruptcy attorney and a Subchapter V trustee, to testify as an expert witness concerning the appropriateness of the attorney fees requested. Apr. Tr. at 11. In addition to her law degree, Ms. Beran holds a Master's in Business Administration. *Id*. at 12. Following service as a staff attorney and law clerk for three years, Ms. Beran has practiced bankruptcy law for thirty years, both as a private practitioner representing various constituencies and as a Subchapter V trustee in the Richmond, Norfolk, and Newport News Divisions of this Court and in the United States Bankruptcy Court for the Western District of Virginia. *Id*. at 12-14; *see also id*. at 15; *see* Hearing Exhibits, Exh. 1, Curriculum Vitae and

---

[17] In his Response, Mr. Lake also discusses various aspects of the case Mr. Lamey filed for one of Mr. Cox's corporate entities as well as other cases filed by entities apparently owned by Mr. Cox. *See* Response, at 4-7. As Mr. Lamey did not testify and no evidence was presented on behalf of the Debtor or any other party on these topics, the assertions by Mr. Lake in this regard will not be considered by the Court.

10

Resume of Paula Beran, Esquire, at 1, 3-4. Ms. Beran has served as trustee in twenty-six (26)

cases filed under Subchapter V of Chapter 11 since the 2020 enactment of Subchapter V of the

Bankruptcy Code. Apr. Tr. at 15-16; Hearing Exhibits, Exh. 1, at 3. She noted the varying nature

of the Subchapter V cases in which she has served as trustee, ranging from dismissal within the

first month to consensual plan confirmation. Apr. Tr. at 16. Ms. Beran has also represented

numerous Subchapter V and small business debtors. *Id*. at 16-17; Hearing Exhibits, Exh. 1, at 4.

Ms. Beran has made numerous continuing legal education presentations on the topics of both

Subchapter V practice and bankruptcy compensation issues. Apr. Tr. at 17-18; Hearing Exhibits,

Exh. 1, at 4-6. Ms. Beran further disclosed that Mr. Lake has represented her law partner, Lynn

Tavenner, Esquire, in her capacity as a Chapter 7 trustee; that she and Mr. Lake attended law

school together and belong to some of the same bar associations; and that she served as a

bridesmaid in Mr. Lake's first wedding at the request of Mr. Lake's now-former spouse (with

whom Ms. Beran is still friends).[18] Apr. Tr. at 12-13.

Ms. Beran detailed her preparation to testify in this matter included reviewing the

Application; Objection; docket; pleadings; and claims. *Id*. at 18; *see also id*. at 24. She also

refreshed her recollection concerning the applicable precedent in the Fourth Circuit concerning

compensation, including *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.

1974), as adopted by the United States Court of Appeals for the Fourth Circuit in *Barber v.

Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978); this Court's decision in *In re Vernon-Williams*, 377

B.R. 156 (Bankr. E.D. Va. 2007); and the current state of the law concerning fee applications.

Apr. Tr. at 18. Further, she reviewed the fee applications filed in ten (10) to fifteen (15)

---

[18] Mr. Lake later specified that his first wedding occurred over thirty (30) years ago. Apr. Tr. at
22.

bankruptcy cases in the Eastern and Western Districts of Virginia, including the hourly rates sought therein. *Id*. at 18-19; *see also id*. at 20. Ms. Beran also cited her background reviewing fee applications filed in cases where she served as Subchapter V trustee and filing her own fee applications. *Id*. at 20. Ms. Beran asserted that her combined preparation and professional experiences well-inform her of the required tasks and necessary time to competently and ethically represent Subchapter V debtors and the appropriate range of hourly rates charged by counsel and their support staff. *Id*. at 19-20.

Neither the United States Trustee nor the Chapter 7 Trustee objected to Mr. Lake's request to designate Ms. Beran as an expert witness concerning the appropriateness of attorney fees in Chapter 11 Subchapter V cases. *Id*. at 21. Mr. Cox objected to Ms. Beran's expert witness designation not in terms of her qualifications but rather, on the basis of bias due to her personal relationship with Mr. Lake. *Id*. at 21-22. The Court overruled Mr. Cox's objection, finding insufficient evidence to constitute potential bias by Ms. Beran.[19] *Id*. at 23. The Court designated Ms. Beran as an expert witness as to the appropriateness of attorney fees in cases under Subchapter V of Chapter 11. *Id*. at 23-24.[20]

1. Discussion of the Contested Time Entries

A significant portion of Ms. Beran's direct testimony focused on the Contested Entries. *See id*. at 24-40. Ms. Beran testified that she evaluated each Contested Entry pursuant to certain factors enumerated in the *Johnson* and *Barber* cases, specifically, the time; difficulty and/or novelty of the matters; the requisite skill to perform the legal services; and the standard and comparable fees for such services. *See id.* at 25-26*.* To resolve the dispute, the Court will discuss

---

[19] The Court's ruling on Mr. Cox's objection is discussed further in Section III.B.2, *infra*.
[20] The Court accepted in evidence Ms. Beran's curriculum vitae and resume. Apr. Tr. at 24.

the Contested Entries,[21] Mr. Lake's response thereto as well as his testimony, and Ms. Beran's testimony in support of the Application.

Mr. Lamey first identifies an entry detailing a one-hour call with Ms. Hall on July 9, 2024. Letter, at 2; *see* Time Records, at 4. Mr. Lamey states, "I do not know how this individual is involved in this case, but this a very long phone call to discuss this case. This case is a single asset real estate case. I can't imagine a full conversation on all relevant matters would last more than 30 minutes." Letter, at 2. In his Response, Mr. Lake counters, "The fact that [Mr. Lamey] does not know [that Ms. Hall was the Subchapter V Trustee] reflects . . . a lack of thoroughness in his review of the case and/or an unfamiliarity with how subchapter V cases proceed in the Eastern District of Virginia."[22] Exhibit 1 to Response, at 1.[23] Mr. Lake further asserts the criticality of communicating with the Subchapter V Trustee early in the case to discuss the Debtor's forthcoming Subchapter V plan; issues regarding obtaining information from the lender on the Property; and the status conference required by 11 U.S.C. § 1188 made such call reasonable, necessary, and consistent with the instant practice area. *Id*. Ms. Beran testified that Mr. Lake's communications with the Subchapter V Trustee were both essential and required by this Court to enable the Subchapter V Trustee to become intimately familiar with the Debtor's case. Apr. Tr. at 25-26. She further opined that a one (1) hour call was "not long enough." *Id*. at 26. As to the reasonableness of this time entry, Ms. Beran emphasized, "[I]t is critical for debtor's counsel and the . . . Subchapter V trustee to have numerous conversations. . . . [T]he

---

[21] The Contested Entries are addressed in the order set forth in the Letter, rather than in the chronological order of occurrence.

[22] As the docket of this case reflects, Ms. Hall was appointed as Subchapter V Trustee in the case on May 22, 2024. ECF No. 6, Appointment of Trustee.

[23] The page number references for citations to Exhibit 1 to Response correspond to those assigned by the filer at the foot of the page.

time expended on that, in my expert opinion, is not only reasonable, it is necessary and required." *Id*.

Mr. Lamey next discusses two (2) entries[24] totaling four (4) hours billed to draft, review, and revise the Chapter 11 Subchapter V plan.[25] Letter, at 2; *see* Time Records, at 4, 16. Mr. Lamey writes that 4 hours "is an unreasonable amount of time to review and revise the Subchapter V plan." Letter, at 2. Mr. Lake responds that "the plan and all its component parts . . . were drafted with the care and thoroughness which made them compliant with applicable law and rules and would have likely resulted in the plan's confirmation, had the sale of the property which was to provide the plan's funding mechanism, not fallen through . . . ." Exhibit 1 to Response, at 2.[26] From a substantive perspective, Mr. Lake explains that a plan filed pursuant to Subchapter V contains many of the elements set forth in a traditional Chapter 11 disclosure statement, including a recitation concerning the debtor's historical business operations; liquidation analysis; and projections concerning plan feasibility. *Id*. Therefore, he asserts that the time devoted to drafting the plan was comparable to that spent by other attorneys representing Subchapter V debtors in this district. *Id*. (citing example cases from the Eastern District of

---

[24] Mr. Lamey references a time entry for July 8, 2024; however, Mr. Lamey's description of that time entry does not correspond to Mr. Lake's time records. Rather, the Court believes Mr. Lamey's reference is to a July 2, 2024 time entry that notes, in pertinent part, "draft chapter 11 plan (.5)". Time Records, at 4. The Court will conduct its analysis accordingly.

[25] *See* ECF No. 37, Plan of Liquidation for Small Business Under Chapter 11, filed Aug. 19, 2024.

[26] The United States Trustee objected to the Subchapter V plan after the Debtor withdrew the motion to sell the Property. ECF No. 58, United States Trustee's Objection to Confirmation of Debtor's Plan of Liquidation for Small Business Under Chapter 11, filed Oct. 10, 2024. On October 18, 2024, the Court entered an order, to which the Debtor consented, sustaining the objection to confirmation lodged by the United States Trustee. ECF No. 61.

Virginia).[27] Ms. Beran testified that the amount of time expended on the review and revision of the plan is both within the range of reasonableness and necessary. Apr. Tr. at 27. In support of her opinion, she explained that while there is a "form" Subchapter V plan that can be used as a starting point, it is not a "plug-and-play type of plan," as there are substantive disclosure, class designation, and other requirements that warrant the time recorded for drafting the plan under the *Johnson* analysis. *Id.*

The fourth and fifth entries Mr. Lamey identifies total one (1) hour to draft and revise a notice of confirmation hearing, ballots, and the deadlines for objections and acceptances of the Subchapter V plan.[28] Letter, at 2; *see* Time Records, at 16. Mr. Lamey criticizes the "substantial amount of time" spent on such tasks and questions why these tasks were completed by Mr. Lake instead of a legal assistant at a lower rate. Letter, at 2. Mr. Lake notes the time billed reflected time he contemporaneously kept in reviewing and revising initial drafts of the noted documents

---

[27] Mr. Lake references *In re Hubble*, in which this Court approved debtor's counsel's fee application reflecting over ten (10) hours spent preparing the Subchapter V plan. Exhibit 1 to Response, at 2 (citing *In re Larry Dean Speas and Lori Frizzell Hubble*, Case No. 19-72279-SCS, ECF No. 108, First Application for Compensation and Reimbursement of Crowley Liberatore P.C. filed July 6, 2020; ECF No. 120, Order Granting First Application for Compensation and Reimbursement of Crowley Liberatore P.C., entered Aug. 11, 2020). Mr. Lake also cites to *In re J&G Consulting Services LLC*, in which this Court approved a fee application reflecting 3.7 hours expended on the same task. *Id.* (citing Case No. 24-33528-KHK, ECF No. 62, First and Final Application by Kane & Papa, P.C. for Compensation, filed Jan. 29, 2025; ECF No. 76, Order Granting First and Final Application by Kane & Papa, P.C. for Compensation, entered Feb. 28, 2025).

[28] *See* ECF No. 47, Notice of Hearing on Confirmation, and Notice of Times Fixed for Filing Acceptance or Rejections of Plan and Objections to Confirmation, filed Aug. 24, 2024. Dates for confirmation hearings of Chapter 11 plans are assigned by the Court pursuant to Local Bankruptcy Rule 9013-1(H)(3) via order of this Court, thereby necessitating a debtor's transmission of a notice of hearing, ballots, and notice of deadlines separate from the filing of the plan. *See* ECF No. 45, Order Fixing Hearing on Confirmation and Times for Filing Objections to Confirmation and Acceptances or Rejections of Plan, entered Aug. 21, 2024.

prepared by legal assistants.[29] Exhibit 1 to Response, at 3. Ms. Beran testified that the amount of time spent on these tasks is reasonable and necessary when considered in the context of the *Johnson* factors. Apr. Tr. at 27-28. Ms. Beran reasoned that although there are form notices and ballots, particular care is needed to prepare notices and ballots in compliance with the numerous requirements of both the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules. *Id*. at 28. Ms. Beran further explained that ballots must be free from confusion so as to facilitate voting and obtain creditor consent. *Id*.

Mr. Lamey next cites an entry for 0.7 hours for the drafting of a response to a motion for relief from stay. Letter, at 2; *see* Time Records, at 17. Mr. Lamey characterizes the amount of time spent on this task as "exorbitant" and queries why Mr. Lake does not utilize a form response to simplify drafting and increase efficiency. Letter, at 2. Mr. Lake contends that he contemporaneously kept his time while working from and revising initial drafts prepared by a legal assistant and that such time was reasonable and necessary under the circumstances.[30] Exhibit 1 to Response, at 3. Mr. Lake explains that the motion for relief from stay totaled forty-three (43) pages, including appended instruments and other exhibits, and required the review of multiple conflicting payoff statements provided to him by Mr. Cox on behalf of the Debtor. *Id*. Ms. Beran testified that, based upon her review of the pleadings filed in this case, the amount of time expended to draft a response to the motion for relief from stay is reasonable and necessary.

---

[29] Mr. Lake again points to the approved fee application for debtor's counsel in *In re Hubble*, discussed in n.27, *supra*, as an example of comparable time spent on such task in a similar case. Exhibit 1 to Response, at 3.

[30] The Court notes that the response filed on behalf of the Debtor by Mr. Lake properly addressed each of the sixteen (16) factual and legal contentions individually. *See* ECF No. 54, Response of Debtor to Motion for Relief from the Automatic Stay, filed Sept. 17, 2024. The response further set forth three (3) affirmative defenses. *Id*.

Apr. Tr. at 29; *see also id*. at 18 (Ms. Beran's testimony referencing her review of pleadings in the case).

Mr. Lamey then cites two (2) time entries concerning emails from Mr. Lake. The first is an entry for 0.2 hours for Mr. Lake's receipt, review, and response to the Debtor's email regarding questions about the plan and motion for relief from stay. Letter, at 2; *see* Time Records, at 18. Mr. Lamey claims that "in practice, emails [should be billed at] 0.1 hours or not billed at all." Letter, at 2. Mr. Lake counters that this entry reflects contemporaneously recorded time for an email exchange during which he provided a detailed response to questions concerning the motion for relief, Subchapter V plan, and other matters as requested by the client. Exhibit 1 to Response, at 4.[31]

Next, Mr. Lamey discusses an entry for 0.5 hours for drafting an email to Mr. Cox as the debtor designee, which he believes is "exorbitant," but does not further elaborate. Letter, at 2; Time Records, at 5. The time entry indicates Mr. Lake emailed Mr. Cox regarding the required bankruptcy schedules and statement of financial affairs and transmitted those documents to him; requested authority to consent to the order conditioning rights of a debtor in possession; and followed up concerning the debtor in possession bank account and other outstanding requests. Time Records, at 5. Mr. Lake opposes Mr. Lamey's characterization, asserting that the email identified in this entry is actually a chain of over fifteen (15) emails exchanged between Mr. Cox and Mr. Lake over more than thirteen (13) hours on May 29, 2024. Exhibit 1 to Response, at 4. According to Mr. Lake, the various emails "pertain[ed] to debtor's production of information necessary to complet[e] its schedules and statements, fulfilling requests for documents and information requested by the [United States Trustee], and matters related to the [initial debtor

---

[31] Ms. Beran did not provide specific testimony regarding this time entry.

interview] . . . scheduled for the next day." *Id*. Mr. Lake further notes that, while he contemporaneously recorded his time for the email exchange, he likely understated the actual time spent communicating with Mr. Cox.[32] *Id*. During his testimony, Mr. Lake indicated that early in his engagement, he discovered that the Debtor's "financial records . . . were not robust," which "presented some challenges," as did issues concerning the necessary disclosures concerning holdover tenants in the Property. Apr. Tr. at 48-49.[33]

Mr. Lamey then takes issue with an entry of 0.8 hours to draft amended schedules, statement of financial affairs, and related documents. Letter, at 2; *see* Time Records, at 6. Mr. Lamey contends that the time expended on this task is "extremely long" and questions why the task could not be done by a legal assistant at a lower hourly rate. Letter, at 2. Mr. Lake replies that this task was necessitated by the failure of Mr. Cox, on behalf of the Debtor, "to provide accurate and/or complete information prior to the filing of the original schedules and statements." Exhibit 1 to Response, at 5. Mr. Lake explains that the revisions required legal analysis and review of various documents that could not be performed by a legal assistant. *Id*. Ms. Beran testified that the time expended to draft the amended schedules and statement of financial affairs is reasonable and necessary based upon the time and labor required; the novelty and difficulty of the task, and the skill required to perform it; as well as the customary fee in comparison to awards for comparable work in similar cases in this jurisdiction. Apr. Tr. at 29. Concurring with Mr. Lake's written explanation, Ms. Beran noted that attorneys must exercise

---

[32] Mr. Lake did not question Ms. Beran concerning this time entry.

[33] Mr. Lake later explained that once the tenants vacated the Property, the Debtor lacked rental income with which to make adequate protection payments to the lender and pay post-petition real estate taxes, which posed an additional challenge when trying to demonstrate the Debtor's good faith to the various parties in interest. Apr. Tr. at 54.

due diligence and ensure the accuracy of the amendments, such that amending the documents transcends simply completing forms using a software system. *See id*.

The next three (3) entries cited by Mr. Lamey relate to the review and redrafting of a contract to sell the Property. Letter, at 2; Time Records, at 8. The entries include one (1) hour to review a contract sent to Mr. Lake by Mr. Cox, determine the required or advisable addenda to the contract, and time to draft a new contract; 0.7 hours to redraft the contract and address additional issues regarding addenda and disclosures; and 0.7 hours to incorporate changes to the contract proposed by the Debtor, for a total of 2.4 hours. *See* Time Records, at 8. Mr. Lamey admits that his opinion on these entries consists of "some speculation" because he lacks "all the context." Letter, at 2. Despite these admissions, Mr. Lamey nonetheless critiques the amount of time devoted to these tasks, as he reasons that Mr. Cox prepared the initial contract "likely . . . as a cost saving measure" and regards Mr. Lake's decision to redraft the contract as "excessive and inefficient." *Id*.

Mr. Lake provides the necessary context for these events by explaining that Mr. Cox unilaterally provided an executed sales contract for the Property and requested that Mr. Lake seek this Court's approval of the transaction. Exhibit 1 to Response, at 6 (citing *see* Hearing Exhibits, Exhibit 17, Draft contract of sale supplied by Mr. Cox to Mr. Lake). Mr. Lake notes that the contract contained various mistakes, which necessitated Mr. Lake's complete redrafting. *Id*. The errors included the use of New York state law within a contract to sell property located in Virginia; failure to properly identify the Property; missing disclosures required under federal and Virginia law; failure to provide, as a condition of sale, this Court's approval of the contract; a typographical error in the Debtor's legal name; and inconsistent provisions regarding the number of buyers. *Id.* at 6-7; *see also* Apr. Tr. at 49-51 (testimony by Mr. Lake concerning issues with

contract provided by Mr. Cox). After Mr. Lake brought the errors to Mr. Cox's attention, Mr.

Cox requested that Mr. Lake redraft the contract on an expedited basis. Apr. Tr. at 51; Exhibit 1

to Response, at 7; *see* Hearing Exhibits, Exhibit 18, Email exchange regarding draft contract. Mr.

Lake additionally notes that further changes were thereafter requested to the redrafted contract.

Exhibit 1 to Response, at 7.

Ms. Beran reviewed the contract Mr. Cox initially sent to Mr. Lake,[34] as well as the one

appended to the motion seeking approval of the Property's sale,[35] and concluded that the time

spent reviewing and redrafting the contract was both reasonable and necessary in consideration

of the novelty, difficulty, and skill required to undertake the task, and when comparing the

customary fee for such work to the fees awarded in similar cases in this jurisdiction. Apr. Tr. at

31; *see* Hearing Exhibits, Exhibit 17.[36] Ms. Beran based her conclusion on several facts,

including that the original contract contained the incorrect governing law and inaccuracies in

pertinent contractual details. Apr. Tr. at 31-32. Further, Ms. Beran opined that it was incumbent

upon Mr. Lake to ensure that the contract was suitable for presentation to the Court for approval.

*Id*. at 32.

Mr. Lamey then identifies five (5) entries relating to a motion to sell the Property

pursuant to 11 U.S.C. § 363. Letter, at 2-3; *see* Time Records, at 12, 19-21. Mr. Lake filed the

motion to sell on August 20, 2024. ECF No. 38, Debtor's Motion to Sell Real Property Free and

---

[34] Ms. Beran testified that she was unaware that Mr. Cox drafted the contract he provided to Mr.
Lake; she was only aware it had been drafted by someone other than Mr. Lake. *Id*. at 30.
[35] ECF No. 38, Debtor's Motion to Sell Real Property Free and Clear of Liens and Claims of
Interest; Seeking Waiver of the Fourteen Day Stay of Any Order Pursuant to Rule 6004(h); and
for Related Relief and exhibit thereto (Residential Sales Contract and Addenda), filed Aug. 20,
2024. The motion to sell was among Mr. Lake's Hearing Exhibits at Exhibit 10, which was later
accepted into evidence without objection by any party. Apr. Tr. at 47.
[36] Mr. Lake's Hearing Exhibit 17 was accepted into evidence without objection by any party. *Id*.

Clear of Liens and Claims of Interest; Seeking Waiver of the Fourteen Day Stay and Any Order Pursuant to Rule 6004(h); and for Related Relief and exhibit thereto (Residential Sales Contract and Addenda).[37] The entries consist of 1.4 hours for drafting pleadings; 1.2 hours for reviewing and revising the motion and exchanging emails with the client to obtain information needed for inclusion in the motion; an additional 1.4 hours to review and revise the motion; 1.5 hours to draft a motion to have the motion to sell heard on shortened notice;[38] and 0.8 hours to draft a notice of motion and notice of hearing, for a total of 6.3 hours. Time Records, at 12, 19-21. In Mr. Lamey's opinion, the motion to sell is a "standard motion" for which counsel should use a template, rather than billing for an amount of time he deems "excessive." Letter, at 2-3. Mr. Lamey insists that the notices of motion and hearing constitute simple pleadings that should take minimal time and could be drafted by a paralegal. *Id.* at 3.

Mr. Lake responds that the preparation of the motion to sell was complicated by an open financing contingency in the sales contract; an inability to communicate with the lender holding the first deed of trust on the Property; and his receipt of conflicting payoff amounts from the loan's servicer. Exhibit 1 to Response, at 8; *see* Apr. Tr. at 53, 55-59 (Mr. Lake's testimony regarding payoff amounts varying between $500,000.00, as obtained by Mr. Cox directly from

---

[37] During his testimony, Mr. Lake explained that the Debtor attempted to market the Property without the assistance of a real estate agent. *Id.* at 49. The Debtor did obtain a contract to sell the Property; however, the Motion to Sell was ultimately withdrawn on August 30, 2024, after the potential buyer lost financing. *Id.*; ECF No. 48, Notice of Withdrawal of Debtor's Motion to Sell Real Property Free and Clear of Liens and Claims of Interest; Seeking Waiver of the Fourteen Day Stay of Any Order Pursuant to Rule 6004(h); and for Related Relief. Mr. Lake opined that the sale may have ultimately succeeded had a real estate agent been involved to guide the process and vet the potential buyer. Apr. Tr. at 49.

[38] Mr. Lamey misidentifies this entry as an "expedited motion;" Mr. Lake actually sought approval of a shortened notice period on the motion to sell. Letter, at 3; Time Records, at 20; *see also* n.40, *infra*. Expedited hearings and shortened notice periods are distinct procedural matters pursuant to this Court's Local Bankruptcy Rules. *See* Local Bankruptcy Rule 9013-1(N), (O).

the lender, and $698,000.00, which Mr. Lake received from the servicer, in addition to other payoff amounts supplied by Mr. Cox). Mr. Lake maintains that the loan servicer also experienced communication difficulties with the lender, and the servicer was unaware that Mr. Cox was negotiating directly with the lender regarding a reduced payoff amount. Apr. Tr. at 52-53. As a result, Mr. Lake had difficulty providing advice to the Debtor concerning its ability to reorganize and whether a viable sale could be proposed for Court approval given the lack of equity in the Property. *Id*. at 53-54.[39]

Ms. Beran's review of the motion to sell and the related motion to shorten the notice period[40] lead her to conclude that the time spent drafting the motion to sell and related pleadings was reasonable and necessary. *Id.* at 32-33. She further opined that the time logged for drafting the aforementioned pleadings is on the lower end compared to that spent in similar cases in the Eastern District of Virginia. *Id*. at 33. Ms. Beran's conclusion was bolstered by her additional review of the docket and pleadings in the Debtor's previous case,[41] which reinforced the Debtor's need for representation by diligent counsel to both demonstrate the validity of this pending case and shepherd the potential sale of the Property. *Id.* at 32-33. Regarding Mr. Lake's

---

[39] Mr. Lake references *In re Renee Realty, L.L.C.*, in which this Court approved debtor's counsel's fee application that reflected over seven (7) hours expended on a motion to sell pursuant to Section 363. Exhibit 1 to Response, at 8 (citing Case No. 24-30508-KLP, ECF No. 131, First Interim and Final Application of Hirschler Fleischer, P.C. for Allowance of Compensation and Expense Reimbursement as Counsel to the Debtor for the Period of February 12, 2024 through June 12, 2024, filed June 17, 2024; ECF No. 145, Order Approving First Interim and Final Application of Hirschler Fleischer, P.C. for Allowance of Compensation and Expense Reimbursement as Counsel to the Debtor for the Period of February 12, 2024 through June 12, 2024, entered July 18, 2024).

[40] ECF No. 40, Debtor's Motion to Have Heard on Shortened Notice Its Motion to Sell Real Property Free and Clear of Liens and Claims of Interest and for Related Relief, filed Aug. 20, 2024.

[41] On behalf of the Debtor, Mr. Cox filed a Chapter 11 Subchapter V case without the assistance of counsel on March 26, 2024, that was dismissed April 23, 2024. *See* Case No. 24-70619-FJS.

time drafting the notice of motion,[42] Ms. Beran acknowledged that while attorneys may start with documents drafted by legal assistants, the attorney must verify the accuracy of information therein and ensure compliance with the Court's noticing rules and requirements before endorsing any pleading. *Id.* at 34. In comparison to similar cases filed under Subchapter V, Ms. Beran found Mr. Lake's time within the range of reasonableness. *Id*. at 34-35.

The final two entries Mr. Lamey identifies concern an application to employ a real estate agent in connection with the sale of the Property. Letter, at 3; Time Records, at 24-25. Mr. Lake filed the noted application on November 13, 2024. *See* ECF No. 67, Application to Employ Real Estate Agent and exhibit thereto (listing agreement with proposed real estate agent). The entries, for 0.7 hours each, reflect time expended by Mr. Lake during a three-week period to draft and revise the application to employ the real estate agent and to review the listing agreement Mr. Cox signed with the agent. Time Records, at 24-25. Mr. Lamey asserts that because the real estate agent's employment was never approved by the Court, the application seeking such approval was faulty in some manner. Letter, at 3. Mr. Lamey advocates that the charges for this activity "should be discounted or eliminated if the fault is on debtor's counseling [*sic*]" for unsuccessfully employing the agent. *Id.*

Mr. Lake explained during his testimony that, on behalf of the Debtor, Mr. Cox was "very reluctant, at least at the outset" to engage a real estate agent, despite the urging of both the Subchapter V Trustee and the United States Trustee, and opted instead to market the Property to avoid real estate commission costs. Apr. Tr. at 49. Eventually, the Debtor sought approval to

---

[42] ECF No. 44, Amended Notice of Motion to Sell Real Property Free and Clear of Liens and to Sell Estate's Interest in Real Property Free and Clear of Liens and Claims of Interest, Seeking Waiver of the Fourteen Day Stay of any Order Pursuant to Rule 6004(h), and for Related Relief, and Notice of Hearing, filed Aug. 21, 2024.

engage a real estate agent approximately five (5) months after the instant case was filed. *Id*.; *see also* ECF No. 67. Mr. Lake contends that nothing was done improperly with the application. Exhibit 1 to Response, at 13. Rather, he explains that Mr. Cox directed him to take no further action in the case at approximately the same time the notice period expired for the application. Apr. Tr. at 51-52. While still employed by the Debtor, Mr. Lake solicited the necessary endorsements from the United States Trustee and the Subchapter V Trustee and submitted a proposed order for the Court's consideration.[43] Exhibit 1 to Response, at 13; Apr. Tr. at 52. However, the case was converted to a proceeding under Chapter 7 within the same timeframe, and the order was ultimately not entered.[44] Exhibit 1 to Response, at 13; *see* ECF No. 92, Order of Conversion of Chapter 11 to Chapter 7, entered Feb. 6, 2025; *see also* Apr. Tr. at 52 (testimony by Mr. Lake concerning same).

Ms. Beran reviewed the application seeking the real estate agent's employment in the context of her overall case review. Apr. Tr. at 35. She observed that the time Mr. Lake expended was reasonable and necessary pursuant to the *Johnson* analysis, specifically with regard to the time; difficulty; and requisite skill needed to perform the task, and when taking into account the customary rate and compensation awarded in similar cases. *Id*. She also reviewed time entries related to motions seeking the employment of professionals in similar Subchapter V cases,

---

[43] Mr. Lake also cites to *In re J&G Consulting Services LLC*, in which this Court approved a fee application reflecting 1.3 hours expended on the preparation of pleadings related to the employment of a real estate agent by a Subchapter V debtor's counsel. Exhibit 1 to Response, at 9 (citing Case No. 24-33528-KHK, ECF No. 62, First and Final Application by Kane & Papa, P.C. for Compensation, filed Jan. 29, 2025; ECF No. 76, Order Granting First and Final Application by Kane & Papa, P.C. for Compensation, entered Feb. 28, 2025).

[44] The Court declined to enter the proposed order approving the application to employ the real estate agent because the Property was then under the control of the Chapter 7 Trustee.

including time entries in cases where her firm represents debtors, and found Mr. Lake's time to

be within the range of reasonableness by comparison. *Id*. at 35-36.

### 2. Mr. Lake's Hourly Rate and Overall Compensation

In addition to addressing the individual time entries, the parties also addressed Mr. Lake's

rate and overall compensation at the April 3, 2025 hearing. While Mr. Lamey did not take

specific issue with Mr. Lake's hourly rate, he did remark that it was "unusual" that Mr. Lake

performed a majority of the work in the case, rather than utilizing "lower billing staff" to reduce

the fees charged. Letter, at 3. While acknowledging that he had not provided "an exhaustive list"

of comments regarding the Application for Compensation, Mr. Lamey concluded with his belief

that "a fair and equitable amount for attorney fees and costs . . . should be under $15,000" given

the "size of this case, the work performed, and . . . a review of the docket[.]" *Id*. Mr. Lamey

raises no issue with regard to the requested reimbursement of expenses of $1,155.75.

Based on Ms. Beran's breadth of experience, she is familiar with the hourly rates

typically charged by Subchapter V debtor's counsel, especially via her review of employment

and fee applications in her capacity as a Subchapter V trustee, as well as from the preparation she

undertook prior to testifying in this matter. Apr. Tr. at 36. Ms. Beran's opinion is that Mr. Lake's

rate of $495.00 per hour is within the range of reasonableness, albeit "on the higher range." *Id*. at

37. She elaborated that hourly rates falling above and below that of Mr. Lake have been

approved by courts in the Eastern and Western Districts of Virginia. *Id*. As to the overall

requested compensation, Ms. Beran concluded that, in consideration of the time; difficulty; and

requisite skill needed to perform the work in this case, as well as the customary rate and

compensation awarded in similar cases, the request falls within the range of reasonableness. *Id*.

at 38. Ms. Beran elaborated that when evaluating fees for cases under Subchapter V, one must

look at the totality of the circumstances on a line-item basis because such cases are not subject to a "flat fee" or "one fee fits all" approach; rather, her experience has informed her that fees can vary. *Id*. Ms. Beran commented that the reasonableness of the attorney fee requested here is influenced in part by the approximate nine-month pendency of the case under Subchapter V; that this was the Debtor's second case; that the United States Trustee filed a claim;[45] and there were necessary discussions with the various participating creditors, all requiring proper representation of the Debtor. *Id*. at 39. Ms. Beran found the tasks performed for the Debtor and the time expended thereon not only fell within the range of reasonableness but were a necessity to provide the Debtor with the opportunity to successfully complete the Subchapter V process. *Id*. at 39-40. Finally, Ms. Beran testified that based upon her more than thirty (30) years of practice in the bankruptcy community, her opinion is that Mr. Lake has a reputation as "sound bankruptcy counsel who diligently and zealously represents his clients." *Id*. at 40.

Despite his lack of objection to her qualification as an expert witness, Mr. Cox commenced his cross-examination of Ms. Beran with a series of questions concerning her service as debtor's counsel as a precursor to his inquiries regarding the appropriateness of Mr. Lake's fees. *Id*. at 41-44. Ms. Beran testified that in the immediate past ten (10) years, her firm served as debtor's counsel in approximately twenty (20) small business and/or single asset real estate cases, including cases under Subchapter V of Chapter 11. *Id*. at 41-42; *see also id*. at 44. Of those twenty (20) cases, her firm represented eighteen (18) businesses and two (2) individuals. *Id*. at 42; *see also id*. at 44. Additionally, Ms. Beran has been involved in numerous other Chapter 11 cases for much larger businesses that are not reflected on her curriculum vitae. *Id*. at 42. Ms.

---

[45] The United States Trustee filed a claim for statutory fees pursuant to Chapter 123 of Title 28 of the United States Code related to the Debtor's prior bankruptcy case, Case No. 24-70619-FJS. See Court Claims Register, Claim 3-1, filed July 23, 2024 (last reviewed Nov. 4, 2025).

Beran clarified that her firm served as debtor's counsel in one case involving a single residence and one involving a single asset (a parcel of real estate). *Id*.; *see also id*. at 44 Ms. Beran elaborated that she has also served as counsel to a Chapter 7 trustee in cases where residences and pieces of property were sold and has performed out-of-court workouts for single real estate parcels. *Id*. at 42-43.

Mr. Cox questioned Ms. Beran's basis for determining that Mr. Lake's rate was on the "higher end," considering her limited experience with cases involving single family residences. *Id.* at 45. Ms. Beran explained that the applicable standard of reasonableness requires comparison to rates charged in Subchapter V cases with similar issues at stake, rather than a comparison of the nature or number of the debtor's assets or the specific nature of the debtor's business. *Id.* at 45-46. Finally, Ms. Beran recounted her knowledge of attorneys representing Subchapter V debtors who charge in the range of $375.00 to $390.00 per hour as well as counsel charging between $500.00 and $575.00 per hour. *Id*. at 46.

Other than his cross-examination of Ms. Beran and Mr. Lake, Mr. Cox introduced no evidence as to the reasonableness or appropriateness of Mr. Lake's fees. *Id*. at 61.

### 3. Closing Arguments

Mr. Lake argued that the time records accompanying his Application are sufficiently detailed to support the fees requested. *Id*. He further asserts that Ms. Beran's expert opinion supports both the reasonableness and necessity of the time devoted to the Debtor's case in comparison to other Subchapter V cases in this district. *Id*. at 61-62. Mr. Lake reiterated that neither the United States Trustee nor the former Subchapter V Trustee objected to the Application. *Id*. at 62. He noted that Mr. Cox's Objection focused only on nineteen (19) time entries totaling approximately eighteen (18) hours, and at no time did Mr. Cox advocate for zero

compensation for the Contested Entries. *Id*. at 61. As to his hourly rate, Mr. Lake maintained that

Mr. Cox accepted his $495.00 per hour rate, as demonstrated by the Retention Agreement

attached to both his Application to Employ and the Disclosure of Compensation of Attorney for

Debtor. *Id*. at 62; ECF Nos. 11, 12. Finally, Mr. Lake contends that his rate and the overall

compensation support a finding in his favor pursuant to an analysis under the *Johnson* factors. *Id*.

at 63.

In his closing arguments on behalf of the Debtor, Mr. Cox clarified that he does not seek

a complete denial of the Application, but rather, he requests the Court review the facts of the case

in determining the appropriate compensation. *Id*. at 66; *see also id*. at 67. Mr. Cox reiterated that

while he agreed that Ms. Beran is a "competent" witness, he believes her personal relationship

with Mr. Lake impacts her opinion as to the reasonableness of his fees. *Id*. at 66. Mr. Cox asserts

that Mr. Lake should not be awarded his full hourly fee for tasks such as emails and other tasks

that Mr. Cox deemed "not necessary." *See id*. at 67. Mr. Cox averred that his ultimate contention

with Mr. Lake's rate is that as attorney's fees accrued, Mr. Cox began to fear that the fees would

jeopardize a potential surplus from the sale of the Property. *See id*. at 67-68. Finally, Mr. Cox

insisted that the Court determine the appropriate fee and reasonable rate in relation to cases

involving single-family homes and to take Mr. Lamey's Letter into account when doing so. *Id*. at

68-69.

On rebuttal, Mr. Lake urged the Court to discount Mr. Lamey's Letter as hearsay because

the Letter was neither sworn nor was there an opportunity to cross-examine Mr. Lamey. *Id*. at 69.

Instead, Mr. Lake asserted that the contents of the Letter should be considered argument. *Id*.

Finally, Mr. Lake cited the lack of any evidence from Mr. Cox regarding comparable attorney

fees or instances were a lower amount of attorney fees were charged. *Id*.

Neither the Chapter 7 Trustee nor counsel for the United States Trustee offered any argument regarding the Application for Compensation. *Id*. at 63. Rather, both indicated their lack of objection to and support of the Application and the fees sought. *Id*.

### III. Conclusions of Law

#### A. Standing

Mr. Lake and his firm have not challenged the Debtor's standing to object in this proceeding, nor has any other party in interest done so. However, it remains incumbent upon the Court to decide at the outset if the Debtor, via Mr. Cox, has standing to do so since, if the Debtor lacks standing, this Court need not consider the Objection to the Application. *Benham v. City of Charlotte*, 635 F.3d 129, 134 (4th Cir. 2011); *Yarid v. Ocwen Loan Serv'g*, Civil Action No. 3:17-cv-484, 2018 WL 3631883, at \*2 (E.D. Va. July 31, 2018) (quoting *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001); citing *AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006) (unpublished)).

An insolvent debtor generally cannot establish standing due to the lack of pecuniary interest in the assets to be distributed; in other words, where there are no residual estate funds for the debtor, the debtor cannot challenge the orderly administration of the assets comprising the bankruptcy estate by a trustee. *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003); *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985) (quoting *Kapp v. Naturelle, Inc.* (*In re Kapp*), 611 F.2d 703, 706-07 (8th Cir. 1979)); *Vaughn v. Gold*, 671 B.R. 698, 705 (E.D. Va. 2025) (citing *Willemain*, 764 F.2d at 1022). Conversely, if there is a reasonable possibility that a surplus of assets could inure to the debtor, the debtor has standing to contest claims made in their case. *White v. Univision of Va., Inc.* (*In re Urban Broad. Corp.*), 401 F.3d 236, 243-44 (4th Cir. 2005) (citing *United States Trustee v. Clark* (*In re Clark*), 927 F.2d 793, 795 (4th Cir. 1991));

29

*Robb v. Harder* (*In re Robb*), 534 B.R. 354, 357 (B.A.P. 8th Cir. 2015); *Vaughn*, 671 B.R. at 706

(citing *McGuirl v. White*, 86 F.3d 1232, 1235 (D.C. Cir. 1996)); *In re Kora & Williams Corp.*,

No 88-41402PM, 2006 WL 4482004, at *1 n.1 (Bankr. D. Md. Oct. 28, 2006) (citing *Willemain*,

764 F.2d at 1022-23) (concluding that the Chapter 7 debtor in solvent estate had standing to

object to fee allowance).

Here, the Chapter 7 Trustee has concluded that there may be assets available for

distribution to creditors. *See* ECF No. 113, Trustee Request for Asset Notice, filed Feb. 28, 2025.

Further, the Chapter 7 Trustee has noted the possibility of a surplus of funds to the Debtor after

payment of all claims, including any amounts awarded by this Court on the pending Application.

Apr. Tr. at 6-7; *see also* ECF No. 161, Order to Sell Debtor's Real Estate, entered May 5, 2025,

at 4 (estimating net proceeds to the bankruptcy estate of $63,500.00);[46] ECF No. 164, Trustee's

Report of Sale, filed May 16, 2025 (reporting receipt of sales proceeds of $54,395.22); ECF No.

167, Trustee's Amended Report of Sale, filed June 17, 2025 (reporting receipt of additional

proceeds of $6,116.30 due to overpayment of real estate taxes, for total sales proceeds of

$60,511.52). Total claims of $7,749.40 were filed against the estate prior to the June 3, 2025

deadline to file proofs of claim, in addition to the $39,979.25 administrative claim filed by Mr.

Lake on behalf of his firm. *See* Court Claims Register (last reviewed Nov. 4, 2025). The largest

of those claims, filed by the City of Norfolk, Virginia, by counsel, for real estate taxes of

$7,249.40, was withdrawn on January 29, 2025, and a claim by the Internal Revenue Service,

---

[46] A prior order approving the sale of the Debtor's real property was entered April 4, 2025, but
was later vacated in consideration of the May 5, 2025 Order. *See* ECF No. 129, Order to Sell
Debtor's Real Estate; ECF No. 160, Order Vacating Order to Sell Debtor's Real Estate, entered
May 5, 2025. Nonetheless, at the time of the April 3, 2025 continued hearing on the Application,
the facts of the case demonstrated the possibility of a surplus to the Debtor after payment of all
claims against and expenses of the estate.

originally filed in the amount of $200.00, was later amended to a claim amount of zero. *Id*.; ECF

No. 79, Withdrawal of Claim No. 1 of Norfolk City Treasurer, filed Jan. 29, 2025. The

remaining claim is for $500.00, filed by the Office of the United States Trustee for statutory fees

pursuant to Chapter 123 of Title 28 of the United States Code related to the Debtor's prior

bankruptcy case, Case No. 24-70619-FJS. *See* Court Claims Register, Claim 3-1, filed July 23,

2024 (last reviewed Nov. 4, 2025). Therefore, based upon the record currently before the Court,

including the amount sought in the Application, the Chapter 7 estate appears to be solvent, and it

is reasonable to presume there will be residual funds for the Debtor's benefit from the Chapter 7

estate's liquidation. Such result is neither speculative nor remote and would provide the Debtor

with a direct financial benefit. *See Dandridge v. Scott*, Civil Action No. 3:18CV00051, 2019 WL

4228457, at *2 (W.D. Va. Sept. 5, 2019) (citing *McGuirl*, 86 F.3d at 1235-36; *In re Miller*, No.

RWT 10cv2466, 2011 WL 3758712, at *3-4 (D. Md. Aug. 24, 2011)) (declining to conclude

standing to appeal existed based upon speculative and remote possibility of pecuniary benefit to

appellant); *Peyton v. Keefe* (*In re Keefe*), Adv. No. 09-1008, 2010 WL 1417796, at *2 n.4

(Bankr. E.D. Va. Apr. 2, 2010) (finding that debtor had standing to be heard on trustee's motion

to sell a co-owner's interest in estate property because the alternative relief requested—the sale

of the debtor's interest to the co-owner—could yield a surplus to the debtor); *In re Payne*, No.

CIV. A. 95-8343-W, 1996 WL 33340789, at *1 (Bankr. D.S.C. June 5, 1996) (concluding the

debtor had standing to object to trustee's motion to estimate claim because unsecured creditors

would likely receive a 100% distribution).[47] For these reasons, the Court determines that the

Debtor has standing to object to the pending Application.

---

[47] Where courts are uncertain as to whether a particular party will be economically impacted
such that their standing is questioned, the more cautionary approach is taken, and the matter is

B. Evidentiary Issues

1. Mr. Lamey's Letter

As a preliminary matter, the Letter authored by Mr. Lamey, which is the foundation upon which the Objection relies, does not qualify as evidence, and the Court will not treat it as such. Mr. Lamey did not submit an affidavit, declaration, or other statement under oath in support of his Letter, nor did he testify at the hearing on the Application for Compensation or otherwise appear in this case.[48] Therefore, Mr. Lamey's unsworn statements cannot constitute evidence. *See, e.g.*, *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) ("[A]n attorney's unsworn argument does not constitute evidence . . . ."); *Bowman v. Johnson*, No. 3:08cv449, 2011 WL 1167320, at *8 n.9 (E.D. Va. Mar. 24, 2011) ("[T]he unsworn statements in . . . [a party's] brief generally do not constitute admissible evidence."). Accordingly, the Court construes the contents of Mr. Lamey's Letter as Mr. Cox's argument in support of the Objection, consistent with the request made in the Objection itself. Objection, at 1 (offering Mr. Lamey's Letter "as the Debtor's argument for objecting to Attorney Lake's application").

2. Expert Witness Bias

Mr. Cox objected to the designation of Ms. Beran as an expert witness at the April 3, 2025 hearing on the basis that Ms. Beran's testimony is tainted by bias due to her personal relationship with Mr. Lake.[49] On direct examination, Ms. Beran disclosed that she and Mr. Lake were law school classmates, are members of some of the same bar associations, and that she was

---

decided on the merits. *See, e.g., In re Visiting Nurse Ass'n*, 176 B.R. 748, 751 (Bankr. E.D. Pa. 1995) (citing *Nassau Sav. & Loan Ass'n v. Miller* (*In re Gulph Woods Corp.*), 116 B.R. 423, 430 (Bankr. E.D. Pa. 1990)).

[48] As indicated earlier, Mr. Lamey is not admitted to practice within the Eastern District of Virginia nor is he a member of the Virginia State Bar. *See* Section II.A, *supra*.

[49] Ms. Beran testified that she was to receive a flat fee of $3,000.00 for her expert testimony (Apr. Tr. at 15), which was not cited by Mr. Cox as a basis for any bias as to her opinion.

a bridesmaid at Mr. Lake's first wedding thirty (30) years ago to his now-former spouse. Apr. Tr. at 12-13. Mr. Cox objected to Ms. Beran serving as an expert witness not based upon her professional qualification but rather, because her relationship with Mr. Lake prevented her objectivity: "[I]t is quite difficult to be objective when you have that kind of close, personal relationship." *Id.* at 22. At the hearing, the Court overruled Mr. Cox's objection and designated Ms. Beran as an expert witness, finding that the requirements of Federal Rule of Evidence 702 were met and unchallenged.[50] Mr. Cox reiterated in his closing arguments that Ms. Beran's potential bias counsels against relying upon her testimony. *Id*. at 66.

It is well settled that whether an expert witness is biased is "a question of weight and credibility, rather than admissibility" of the testimony. *United States v. Simmons*, Case No. 2:16cr130, 2018 WL 1882827, at *8 (E.D. Va. Jan. 21, 2018), *report and recommendation*

---

[50] As Judge Leonard explained in *United States v. Simmons*, "Federal Rule of Evidence 702 codifies the standard for admissibility of an expert witness, as explained by *Daubert* and *Kumho Tire*[.]" Case No. 2:16cr130, 2018 WL 1882827, at *3-4 (E.D. Va. Jan. 21, 2018) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993)), *report and recommendation adopted*, 2018 WL 658693 (E.D. Va. Feb. 1, 2018). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

*adopted*, 2018 WL 658693 (E.D. Va. Feb. 1, 2018) (citing *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 324 n.3 (D. Md. 2017); *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 2:14-MN-02502-RMG, 2016 WL 2940784, at *5 (D.S.C. May 6, 2016)). As such, the opposing party may probe such matter during cross-examination to assist the fact finder in assessing the accuracy and truth of the expert witness's testimony. *Dorman v. Annapolis OB-GYN Assocs., P.A.*, 781 F. App'x 136, 144 (4th Cir. 2019) (citing *United States v. Abel*, 469 U.S. 45, 52 (1984); *United States v. Kiza*, 855 F.3d 596, 604 (4th Cir. 2017); *United States v. Caudle*, 606 F.2d 451, 457 n.3 (4th Cir. 1979)).

Ms. Beran outlined the objective methods used to form her opinions, including review of the pleadings in this case, relevant case law, and Subchapter V fee applications approved by this Court in comparable cases. Apr. Tr. at 18-19. Ms. Beran also relies on her significant experience both as counsel for debtors and as trustee in dozens of Subchapter V and other small business cases. *See id*. at 15-17. Mr. Cox does not challenge Ms. Beran's testimony, qualifications, the principles and methods she employed, or her application of those methods to this case. Instead, Mr. Cox objected to Ms. Beran's expert witness designation solely based on the allegation that her personal relationship with Mr. Lake would taint her testimony. On cross-examination, Mr. Cox did not pose any questions to Ms. Beran regarding the relationship or potential bias. Accordingly, consistent with the Court's oral ruling at the hearing, Ms. Beran's personal relationship with Mr. Lake is an insufficient basis for the exclusion of her testimony. The Court further finds that the Debtor, via Mr. Cox, has failed to show that Ms. Beran possesses any bias in favor of Mr. Lake such that the credibility or weight of her opinion concerning the appropriateness of the fees sought here is thereby impacted.

## C. Attorney Fee Analysis

Compensation for an attorney employed by a debtor is governed by Section 330 of the

Bankruptcy Code. The Court may award reasonable compensation for actual, necessary services

as well as the reimbursement of actual and necessary expenses. 11 U.S.C. § 330(a)(1). Section

330(a)(3) provides the starting point for determining what constitutes reasonable compensation

in a Chapter 11 case.

> [T]he court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
> (4)(A) . . . The court shall not allow compensation for—
>
> > (i) unnecessary duplication of services; or
> >
> > (ii) services that were not—
> >
> > > (I) reasonably likely to benefit the debtor's estate; or
> > >
> > > (II) necessary to the administration of the case.

11 U.S.C. § 330(a)(3)-(4)(A).[51] "[T]he factors listed in § 330(a)(3) are non-exhaustive[.]" *In re Retail Grp., Inc.*, Case No. 20-33113-FJS, 2022 WL 9722306, at *9 (Bankr. E.D. Va. Aug. 30, 2022) (citing *In re Grubb*, No. 07-30253-KRH, 2010 WL 396181, at *4-5 (Bankr. E.D. Va. Jan. 25, 2010)), *report and recommendation adopted with modification*, Civil No. 3:21cv167 (DJN), 2022 WL 4287200 (E.D. Va. Sept. 16, 2022). In the Fourth Circuit, long-standing precedent requires the Court to additionally evaluate the reasonableness of attorney fees by the factors set forth in *Johnson v. Georgia Highway Express*, *Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the

---

[51] Federal Rule of Bankruptcy Procedure 2016(a)(1) complements the statutory provision:

> (1) Application. If an entity seeks from the estate interim or final compensation for services or reimbursement of necessary expenses, the entity must file an application showing:
>
> > (A) in detail the amounts requested and the services rendered, time spent, and expenses incurred;
> >
> > (B) all payments previously made or promised for services rendered or to be rendered in connection with the case;
> >
> > (C) the source of the paid or promised compensation;
> >
> > (D) whether any previous compensation has been shared;
> >
> > (E) whether an agreement or understanding exists between the applicant and any other entity for sharing compensation for services rendered or to be rendered in connection with the case; and
> >
> > (F) the particulars of any compensation sharing or agreement or understanding to share, except with a member or regular associate of a law or accounting firm.

Fed. R. Bankr. P. 2016(a)(1).

amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 and n.28 (4th Cir. 1978).[52] The Court must apply these twelve factors (which overlap in part with those set forth in Section 330(a)(3)) to determine the reasonable hours spent and the reasonable hourly rate, which are then multiplied to determine a reasonable attorney fee—the method commonly known as the "lodestar approach." *See Blum v. Stenson*, 465 U.S. 886, 888 (1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Equal Emp. Opportunity Comm'n v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990) (citing *Daly v. Hill*, 790 F.2d 1071, 1082-83 (4th Cir. 1986)). As dictated by statute as well as applicable precedent, hours that were not "reasonably expended" must necessarily be excluded; to that end, "[c]ounsel . . . should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434.

The applicant bears the burden to justify the reasonableness of the requested compensation. *Id.* at 436; *In re Retail Grp., Inc.*, 2022 WL 9722306, at *9; *In re Vernon-Williams*, 377 B.R. 156, 184 (Bankr. E.D. Va. 2007) (citing *Boleman Law Firm, P.C. v. United States Trustee*, 355 B.R. 548, 553 (E.D. Va. 2006)). Such burden extends to "'produc[ing] satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.'" *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). To this end,

---

[52] The twelve quoted factors are collectively referred to herein as the "*Johnson* factors."

the Court is aided by Mr. Lake's detailed, contemporaneously kept time records[53] and Ms. Beran's expert testimony, but nevertheless, must consider the totality of the evidence in determining the reasonable attorney fee.

Regardless of whether an objection is filed, the Court has an independent duty to review a fee application so as to protect the bankruptcy estate and further the public interest by promoting confidence that "'bankruptcy cases are economically administered for the benefit of creditors rather than estate professionals.'" *In re Retail Grp., Inc.*, 2022 WL 9722306, at *8 (quoting *In re Jay*, Bankr. No. 16-22038, 2018 WL 2176082, at *3 (Bankr. D. Utah May 9, 2018), *aff'd sub nom. In re Reynolds*, No. 2:18CV398 DAK, 2019 WL 4645385 (D. Utah Sept. 24, 2019), *aff'd*, 835 F. App'x 395 (10th Cir. 2021)); *see also In re Silvus*, 329 B.R. 193, 204 (Bankr. E.D. Va. 2005) (citing *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3d Cir. 1994)).

On behalf of the Debtor and by adoption of Mr. Lamey's Letter as his argument concerning the Contested Entries, Mr. Cox's complaints are synopsized into four (4) main areas of contention. First, Mr. Lake spent excessive time on certain tasks. Second, and relatedly, Mr. Lake made inadequate use of legal support staff to complete some tasks. Third, Mr. Lake should have either reduced his hourly rate in some instances or waived his fee for others. Finally, Mr. Cox believes that the facts of the case, particularly because the Property was the Debtor's only asset, warrant a reduction in the total fee. To fulfill the Court's inherent duty in evaluating whether Mr. Lake has met his burden to justify the reasonableness of the compensation sought

---

[53] "While contemporaneous time records are preferred and are the most commonly used evidence, they are not essential. They are not conclusive. They may be challenged as was done in this case. In the end, the court must determine from all of the evidence presented the proper fee to be awarded." *In re United Refuse LLC*, No. 04-11503-RGM, 2007 WL 1695337, at *47 (Bankr. E.D. Va. June 7, 2007) (quoting *Boleman Law Firm*, 355 B.R. at 553).

and likewise address the Debtor's complaints, the Court will analyze both the Application as a whole, as well as the Contested Entries, in the context of the applicable *Johnson* factors, to determine the appropriate compensation to award for the Application.

### 1. The Time and Labor Expended

The first *Johnson* factor, which requires the Court to "weigh the hours claimed" against its own knowledge and experience concerning the time to complete similar tasks, coincides with Section 330(a)(3)(A) ("the time spent on such services") as well as Section 330(a)(3)(D) ("whether the services were performed within a reasonable amount of time"). *Johnson*, 488 F.2d at 717. The Court must also scrutinize any duplication of effort under both the first *Johnson* factor and Section 330(a)(4)(A)(i). *Id*.

The Application seeks attorney fees of $38,823.50, representing 83.7 hours of work by Mr. Lake and 3.2 hours by his legal assistant. Application ¶¶ 14, 18. In support of the Application, Ms. Beran concludes that Mr. Lake's total time falls within the range of reasonableness and was necessary to the representation when considering the totality of the circumstances of the Debtor's case. Ms. Beran reaches the same conclusion regarding the Contested Entries for which Mr. Lamey (and, by extension, Mr. Cox) takes issue with the amount of time expended by Mr. Lake. The first such entry is an hour-long telephone call to the Subchapter V Trustee at the commencement of the case. Mr. Lake and Ms. Beran both provide a thorough explanation for the need for the call. Based on her deep experience, Ms. Beran finds that, contrary to Mr. Lamey's statement, the call was quite necessary to the case and in terms of the time spent, was "not long enough." Apr. Tr. at 26. The Court likewise concludes the amount of time is reasonable for this task. Such communications early in the life of a case are imperative

both for a debtor's success and to enable the Subchapter V trustee to provide the required input and oversight during a case, including the facilitation of a plan of reorganization.[54]

Mr. Lamey also complains about the four (4) hours spent drafting, reviewing, and revising the Subchapter V plan and one (1) hour to draft and revise the confirmation hearing notice, ballots, and deadlines information, although he provides no reasoning in support. The Court finds no weight can be afforded to this argument. The numerous requirements (in the form of statutes, rules, and substance) demand a Subchapter V plan and its attendant notices to be drafted with great care and precision to ensure its success. The Subchapter V eligibility ceiling[55] should not be perceived as an indication that the Court lowers its expectations for the plan's contents in Subchapter V versus one filed in a traditional Chapter 11 case. Rather, as described by both Mr. Lake and Ms. Beran, the Court expects a fulsome plan sufficient to fulfill the statutory requirements, provide historical detail, set forth a clear path for repayment or liquidation (as appropriate), and enable creditors to make an informed decision when voting. Such plans and the related notices are not drafted hurriedly or carelessly. The Court finds the time collectively devoted to these tasks to be reasonable.

Mr. Lamey makes similar arguments concerning the drafting of a response to a motion for relief from stay (0.7 hours) and the Debtor's amended schedules, statement of financial affairs, and related documents (0.8 hours); email communications with Mr. Cox (two (2) entries totaling 0.7 hours); the drafting and revision of the sales contract (multiple entries totaling 2.4 hours); and five (5) entries related to the motion to sell the Property (which entries total 6.3

---

[54] *See* 11 U.S.C. § 1183(b) (setting forth the duties of the Subchapter V trustee).

[55] A Chapter 11 debtor may elect to proceed under Subchapter V if it has "aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $3,424,000." 11 U.S.C. § 101(51D)(A).

hours). Mr. Lamey asserts that Mr. Lake could have reduced his time and efforts for these tasks by utilizing forms, templates, and the time of a legal assistant. Mr. Lake's explanations support his time on these matters in all respects. Ms. Beran's testimony concerning Mr. Lake's time on both the Contested Entries and the Application as a whole further support his time and labor. Based upon her review of Mr. Lake's time in consideration of her experience as both debtor's counsel and a Subchapter V trustee, she finds Mr. Lake's time both within the range of reasonableness and necessary to the Debtor's representation. In fact, she believes the 6.3 hours spent on the motion to sell the Property and related pleadings to be more moderate when compared to similar cases in this District. Apr. Tr. at 33.

The Court finds the time spent on the enumerated tasks is reasonable, as is the total time devoted to representing the Debtor. First, a review of the noted documents, all of which were filed with the Court, evidences the necessary skill and attention to detail paid by Mr. Lake in his effective representation of the Debtor. Such does not always translate to reduced time spent for a work product. On the contrary, such skill and effort often, in this Court's vast experience, reveal additional issues and considerations that counsel must address in furtherance of his professional and ethical duties. Second, as explained below and incorporated herein by reference, the required skill to perform these tasks warranted the use of Mr. Lake's time, as opposed to a legal assistant. *See* Section III.C.3, *infra*. Further, some inefficiencies appear to the Court to have been caused by Mr. Cox himself,[56] particularly regarding the sales contract for the Property. Had a real estate agent been involved with the transaction from the beginning, Mr. Lake's time reviewing the

---

[56] *See, e.g.*, Time Records, at 6 (June 13, 2024 time entry for 0.2 hours for email response to client with information previously provided); 19 (time entries from August 19 and 20, 2024, for multiple emails and voicemails to client regarding monthly operating report information); 22 (August 22, 2024 time entry for 0.2 hours indicating second provision of information to client regarding issues related to the dismissal of prior case).

contract would have been minimized and the time redrafting it likely nonexistent. However, it was the Debtor's choice, at that stage of the proceeding, to forgo use of such professional; in the end, this must come at a cost to the Debtor. Finally, the challenges Mr. Lake faced, including lender communication issues, needed reconciliation of multiple payoff statements, and difficulties with the Debtor's financial records, inevitably increased the time he devoted both to the Contested Entries and other time spent on this case. To be sure, the *Johnson* Court noted that "non-legal work may command a lesser rate." *Johnson*, 488 F.2d at 717. The Court finds no evidence of such instances here.

For these reasons, the Court finds that the time and labor expended both by Mr. Lake and his legal assistant, as represented by the time records attached to the Application, support a finding of reasonableness under the first *Johnson* factor and the statutory requirements of Sections 330(a)(3)(A) and (D). The Court further concludes there was no duplication of services here, in accordance with Section 330(a)(4)(A)(i). *See also* Section III.C.13.a, *infra* (discussing billing judgment).

### 2. The Novelty and Difficulty of the Questions Raised

The second *Johnson* factor encompasses the statutory charge to consider the "complexity, importance, and nature of the problem, issue, or task addressed" in relation to the reasonableness of the time expended. 11 U.S.C. § 330(a)(3)(D); *Johnson*, 488 F.2d at 718. On behalf of the Debtor, Mr. Cox adopts Mr. Lamey's position that the overall fee is excessive in light of the "size of this case" and "the work performed." Letter, at 3. Mr. Lamey suggests that the Subchapter V and single asset characteristics of this case militate in favor of a lower fee for the Contested Entries concerning the telephone call with the Subchapter V Trustee and the drafting of the plan and amended schedules. *Id.* at 2. Additionally, Mr. Lamey implies that the response

to the motion for relief from stay and the motion to sell were both straightforward pleadings that did not require expenditure of significant time. *Id*. at 2-3.

By contrast, Ms. Beran provides specific, detailed testimony that the novelty and difficulty of the tasks performed by Mr. Lake supports the requested fee as a whole. Regarding the drafting of the noted pleadings and documents, Ms. Beran points out that legal analysis is required to carry out these tasks based upon a debtor's specific circumstances. She further cites the particular diligence and care needed to draft these documents to ensure compliance with applicable law. For his part, Mr. Lake references, among other aspects, the many parallels between Subchapter V and traditional Chapter 11 cases in terms of drafting the plan. He supports the need for amending the Debtor's schedules by citing the Debtor's failure to provide all needed information at the commencement of the case. He also highlights certain difficulties encountered during the case that impacted his ability to provide the Debtor with appropriate legal advice (especially regarding the motion to sell), including the lack of communication with the lender; receipt of multiple payoff statements from various sources; and certain issues centered on Mr. Cox, such as his seeming insistence on directly communicating with the Property's lender, reticence to engage a real estate agent, and unilateral contract drafting.

The underlying issues and events Mr. Lake addressed during his representation of the Debtor are not uncommon from a legal standpoint, and indeed, can occur regardless of the case chapter. Further, it is not uncommon for debtors to file amended schedules to correct earlier disclosures, as it is their duty to do so. As in a traditional Chapter 11 case, Subchapter V plans have numerous substantive and procedural requirements, which necessitate a high level of legal acumen such as that possessed by Mr. Lake, and were not, in theory, unreasonably difficult to fulfill in the instant case. However, it is clear from the record that Mr. Lake faced multiple

challenges that made it more difficult for him to provide suitable legal advice during his representation of the Debtor. The Court generally encourages debtors and their designees to actively participate in their cases. That said, the debtor designee here—Mr. Cox—did so in such a way as to complicate to some extent Mr. Lake's ability to discharge his duties to the Debtor and required Mr. Lake to expend additional effort to effectively represent the Debtor. Accordingly, the Court finds that this *Johnson* factor, as well as the requirements of Section 330(a)(3)(D), does not provide a basis for reduction of the attorney fee sought and instead supports the reasonableness of the requested fees.

### 3. The Skill Required to Properly Perform the Legal Services Rendered

Mr. Lamey expresses that the "size of this case" permitted a reduced level of legal skill to complete certain tasks and thus warranted more use of a legal assistant than Mr. Lake employed, which, in turn, would have lowered the overall fee. Mr. Lamey's opinion in this regard underscores his recitations about the time entries for the telephone call with the Subchapter V Trustee and the drafting and revision of documents, including the Subchapter V plan, notice of confirmation hearing and ballots, amended schedules and statements, and motions to sell and shorten the notice period thereon. Letter, at 2-3.

Ms. Beran testified extensively as to the skill required to represent the Debtor here, both as to the noted Contested Entries and the case overall. She emphasized the need for experienced, knowledgeable counsel, in furtherance of the Debtor's duties, to communicate extensively with the Subchapter V Trustee and prepare accurate schedules and statements by employing the requisite due diligence and legal analysis. In contrast to Mr. Lamey's insinuation, Ms. Beran clarified that in the Eastern District of Virginia, Chapter 11 Subchapter V cases are not a "fill-in-the-form" type of practice. Rather, such representation requires comprehensive knowledge of

Subchapter V procedural and substantive requirements to file a confirmable plan, provide the requisite due process notice to creditors and parties in interest, and supply a ballot that facilitates creditor participation and voting. Ms. Beran further commented on the skill needed to revise the sales contract for the Property, opining that Mr. Lake was obligated to ensure the Debtor presented a contract approvable in both form and substance with any motion to sell filed with the Court. As to the latter, Ms. Beran cited the importance of verifying the motion's recitations and complying with the Court's rules and procedures. In general, Ms. Beran found Mr. Lake's skillset provided the necessary expertise to adeptly counsel the Debtor in all material respects and supports his total fee request.

Similarly, Mr. Lake cited the multiple requirements embedded in the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules with which a Subchapter V plan and notices must comply, in addition to the substantive requirements necessary to achieve confirmation, many of which mimic the requirements in a traditional Chapter 11 case. He also highlighted the inappropriateness of utilizing a legal assistant to complete the Debtor's amended schedules, noting that various documents required legal analysis to accomplish the task. Mr. Lake further highlighted the skills utilized during his representation by describing his interactions concerning the sales contract Mr. Cox provided and, thereafter, the redrafting of the sales contract in accordance with the requirements of Virginia law. While preparing to file a motion to sell the Property on the Debtor's behalf, Mr. Lake navigated several wide-ranging payoff amounts on the Property, had to resolve the financing contingency in the contract, and experienced communication issues with the lender.

Based upon a review of the entire Application for Compensation, the Court finds that Mr. Lake has exhibited a high level of skill appropriate to the representation of Chapter 11

Subchapter V debtors generally and the instant Debtor in particular, such that this *Johnson* factor, as well as the requirement of Section 330(a)(3)(E) (the demonstration of skill), is met.[57] *See Johnson*, 488 F.2d at 718. He capably and carefully executed all tasks required by the Bankruptcy Code and his client, in accordance with this Court's expectations of counsel in Subchapter V cases. As expressed by Ms. Beran, each Subchapter V case presents its own unique circumstances that debtor's counsel must evaluate on a case-by-case basis to determine the most efficient and effective approach to representation to accomplish the debtor's ultimate goals. While in some instances, legal support staff may appropriately assist an attorney in furtherance of their representation of a debtor, the Court concludes that it was not improper for Mr. Lake to complete the tasks in the noted Contested Entries himself. To be sure, some tasks in a law practice may be more efficiently completed, at least in part or at their beginning stages, by a paralegal or other support personnel. However, it is equally true that, for other tasks, an attorney's review and revision of another's work (particularly when legal analysis is required) will yield a less efficient and less fruitful work product. The tasks Mr. Lamey asserts should have been performed by a legal assistant fall into the latter category. Accordingly, the Court will not reduce the attorney fee sought on this basis. Instead, the Court concludes that the skill required and exhibited to represent the Debtor favors the fees requested here.

### 4. The Attorney's Opportunity Costs

The Court concludes that the fourth *Johnson* consideration is not a factor in this analysis. Mr. Lake cites no impact on any lost representation opportunities of other clients as a result of his representation of the Debtor, either in his Application for Compensation, his Response, or his

---

[57] Mr. Lake's overall skill and experience in the bankruptcy field are discussed in the context of the ninth *Johnson* factor, *infra*.

testimony. Ms. Beran provided no testimony regarding this specific factor. Likewise, the Court's

independent review of the evidence submitted finds no opportunity costs due to either a conflict

of interest occurring from the representation or a significant preclusive impact on Mr. Lake's

ability to perform work for other clients.

### 5. The Customary Fee for Like Work

Read together, as required by Fourth Circuit precedent, the fifth *Johnson* factor and

Section 330(a)(3) require the Court to examine the rate charged in the Application at hand in

relation to the hourly fee customarily charged by comparable counsel for similar work in the

community. *See* 11 U.S.C. §§ 330(a)(3)(B), (F); *Johnson*, 488 F.2d at 718. While Mr. Cox

adduced no evidence regarding customary fees, he argued that Ms. Beran's relationship with Mr.

Lake impacted her opinion on his fees to the Debtor's detriment.[58] He further asserted that the

Court should determine Mr. Lake's hourly rate in comparison to other cases involving single-

family homes but provides neither a legal nor factual basis for this narrow viewpoint.

As with other factors, Ms. Beran's extensive familiarity with hourly rates within the

Eastern District of Virginia for Subchapter V cases provides important context for Mr. Lake's

$495.00 hourly rate. Ms. Beran concludes Mr. Lake's rate is within the range of reasonableness,

considering her knowledge of fees ranging from $375.00 to $575.00 in this district, though

admittedly "on the higher range" of such fees. Apr. Tr. at 37. Ms. Beran's assessment is based

upon significant experience both as a practitioner and a Subchapter V trustee. Mr. Cox's attempt

on cross-examination to discredit the bases of Ms. Beran's opinion in this regard is unavailing.

Ms. Beran's curriculum vitae combined with her testimony evidences her several decades of

---

[58] *See* Section III.B.2, *supra*, discussing the Court's conclusion that Ms. Beran's personal
relationship with Mr. Lake was insufficient to exclude her expert testimony and instead should
be considered as to the weight and credibility of her testimony.

bankruptcy practice in a variety of capacities that well suit her to opine on Mr. Lake's fees in comparison to the relevant community. Further, Ms. Beran formulated her opinion based upon extensive review of the record in this case, the issues faced by the Debtor, and a review of other fee applications in this district—an opinion the Court finds credible and entitled to great weight. As indicated *supra*, Ms. Beran employed an objective methodology of review and analysis to arrive at her opinion. Moreover, the Court has reviewed countless fee applications filed by various counsel and concurs with the expert's conclusion. Mr. Lake's rate is reasonable for the type of representation and tasks performed here and when compared to the hourly rates of similarly situated practitioners engaging in comparable work. The Court likewise finds, based upon its historic experience and review of fee applications, that the $175.00 hourly rate of Mr. Lake's legal assistant is reasonable and comparable to that charged in other cases.

The Court must also comment on the persuasive admission that, on behalf of the Debtor, Mr. Cox agreed to Mr. Lake's hourly fee as evidenced by his signature on the Retention Agreement attached to the Application to Employ and his statements to the Court (Apr. Tr. at 68). He was not forced to select Mr. Lake as his counsel. There is no evidence that Mr. Cox did not knowingly accept the rate and other terms of Mr. Lake's representation. To subsequently assert the inappropriateness of Mr. Lake's rate is best viewed through the lens of Mr. Cox's closing argument: the impact the attorney fees have on the ultimate residual amount the Debtor (and Mr. Cox, as the sole member) will receive. Such approach, however, is clearly not the test the Court must employ; rather the Court must award reasonable compensation for the totality of the actual and necessary work performed representing the Debtor in light of the elements discussed herein.

### 6. The Attorney's Expectations at the Outset of the Case

The instant *Johnson* factor does not impact the Court's analysis of the requested fee. It is axiomatic that all lawyers, when retained by a client at a specified, agreed-upon hourly rate, expect to be compensated at that amount for the hours devoted to that client's case, while recognizing that factors beyond their control, including the requirement for Court approval, can bear on collectability of fees. To be sure, Mr. Lake recounted certain difficulties encountered at the onset of the case, including the Debtor's less-than-robust financial documentation and issues communicating with the Property's lender. Exhibit 1 to Response, at 1; Apr. Tr. at 48-49. However, these issues are not unique to this particular debtor in the Court's experience and were likely not surprising to Mr. Lake given his multiple decades of practice in the bankruptcy arena. Accordingly, the Court finds nothing uncommon to the Debtor's circumstance here that would have colored Mr. Lake's expectations regarding his fees.

### 7. Time Limitations Imposed by the Client or the Circumstances

Mr. Lake's time records reflect that the case was filed temporally proximate to a foreclosure sale. Time Records, at 3 (entry dated May 20, 2024, reflecting Mr. Lake's communication to Mr. Cox confirming the filing of the petition and cancellation of a foreclosure sale); *see also* Apr. Tr. at 48 (Mr. Lake's testimony confirming same). While this is not an unusual circumstance in the bankruptcy field, it generally signals certain extraneous pressures at the commencement of the case. Further, the filing of the petition triggered certain deadlines for the filing of required documents, including a fourteen (14) day deadline for filing all bankruptcy schedules, statement of financial affairs, a summary of the Debtor's assets and liabilities, and a disclosure concerning Mr. Lake's fees, which, if not complied with, could result in the dismissal

of the case.[59] Mr. Lake timely filed these required documents on behalf of the Debtor.[60] Further, on May 30, 2024, the Court entered a Scheduling Order, setting additional deadlines for the Debtor, such as service of notice of the commencement of the case; the filing of a status report pursuant to 11 U.S.C. § 1188(c); and service of the Scheduling Order. *See* ECF No. 14. Mr. Lake likewise complied with the deadlines therein.[61] Moreover, this Court expects Chapter 11 debtors to file, soon after the commencement of the case, an application requesting approval of their counsel's employment. Mr. Lake filed such application on behalf of the Debtor less than one (1) week after the case was filed. *See* Application to Employ. After the expiration of the required notice period, with no objections having been filed, Mr. Lake timely submitted the order approving his employment. *See* ECF No. 25, entered June 18, 2024. Finally, the Debtor also had to prepare for an initial debtor interview with the Office of the United States Trustee[62] and the

---

[59] *See* Fed. R. Bankr. P. 1007(c)(1), 2016(b); Local Bankr. R. 1007-1(A), 2016-1(B); *see also* ECF No. 8, Notice of Possible Dismissal Pursuant to LBR 1007-1, Lists, Schedules and Statements; and Hearing Thereon, entered May 23, 2024. The filing of a Subchapter V petition also establishes a ninety (90) day deadline to file a plan. *See* 11 U.S.C. § 1189(b); Interim Procedure 3016-1 (adopted by United States Bankruptcy Court for the Eastern District of Virginia Standing Order 20-3, effective Feb. 19, 2020); *see also* ECF No. 9, Notice of Possible Dismissal Pursuant to Interim Procedure 3016-1; and Hearing Thereon, entered May 23, 2024. Mr. Lake timely filed the Debtor's plan on August 19, 2024. ECF No. 37.

[60] *See* ECF No. 11, Disclosure of Compensation of Attorney for Debtor, filed May 25, 2024; ECF No. 18, Debtor's Schedules and Statement of Financial Affairs, filed June 3, 2024.

[61] *See* ECF No. 22, Certificate of Service, filed June 5, 2024 (evidencing service of the Notice of Chapter 11 Bankruptcy Case; Notice of Bar Date for Filing Proofs of Claim and Proofs of Interest; and Scheduling Order); ECF No. 30, Debtor's Report Pursuant to 11 U.S.C. § 1188(c), filed June 27, 2024.

[62] Prior to the initial debtor interview, the Debtor, like all Chapter 11 debtors, including those under Subchapter V, was required to submit a substantial number of financial documents to the United States Trustee, including bank statements and account information; insurance declarations; and financial statements. *See* U.S. Department of Justice, *Operating Guidelines and Reporting Requirements of the United States Trustee, Eastern District of Virginia and District of Columbia*, *For Chapter 11 Debtors in Possession and Chapter 11 Trustees*, at 4, 6 (rev. Feb. 27, 2024), https://www.justice.gov/ust/ust-regions-r04/file/1533351/dl?inline (last accessed Nov. 4, 2025).

separate Section 341 meeting of creditors. Here, the initial debtor interview was conducted on

May 30, 2024 (*see* Time Records, at 10), and the meeting of creditors was conducted on June 27,

2024 (*see* ECF No. 15, Notice of Meeting of Creditors, entered June 1, 2024).

Stating the obvious, much needed to be accomplished within the first several weeks of

the case to lay the foundation for the Debtor's hopeful success. Mr. Lake's contemporaneous

time records reflect significant and appropriate time and effort devoted to these necessary tasks

in the weeks following the petition filing. *See, e.g.*, Time Records, at 3-6, 8-10. While these time

constraints are certainly a known quantity for experienced bankruptcy practitioners such as Mr.

Lake, they nevertheless impose a limiting component upon debtor's counsel in the context of a

Subchapter V case, particularly where the debtor designee is geographically separated from both

the Property and Debtor's counsel.[63]

Mr. Lake encountered additional time limitations related to the much-discussed contract

to sell the Property. Mr. Lake received, reviewed, and corresponded about the deficient contract

supplied by Mr. Cox on July 25, 2024. Time Records, at 8. At Mr. Cox's request, Mr. Lake

drafted a new contract on an accelerated basis, completing the same by the following day. Time

Records, at 8; Apr. Tr. at 51. Thereafter, he incorporated changes requested by the client,

necessitating additional time and effort within a compressed duration—although now the client

protests the amount of time devoted to this task.

The record of the case clearly reflects that Mr. Lake met and managed the deadlines

imposed by the Bankruptcy Code, the applicable rules, and the Court, both at the beginning of

the case and throughout his representation of the Debtor, despite facing several challenges. Here,

the Debtor's financial circumstances were such that procuring a prompt sale of the Property to

---

[63] As reflected in ECF, Mr. Cox has a New York mailing address.

provide the funding mechanism for its plan was critical to successful completion of a case under Subchapter V since the Debtor was receiving no income from the Property.[64] The Debtor experienced pressure from the United States Trustee and the Subchapter V Trustee to hire a real estate agent early in the case. The Court finds this pressure well-placed for this Debtor; this Debtor would not have benefitted from lingering in this case without immediate progress toward the sale of the Property. Again, while doubtless uncommon to a practitioner with Mr. Lake's background, the time limitations imposed here support the fees requested.

8. The Amount in Controversy and the Results Obtained

The eighth *Johnson* factor is properly discussed in conjunction with the requirements of both Section 330(a)(3)(C) ("whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title") and Section 330(a)(4)(A)(ii) (which prohibits the Court from awarding fees for services that are not "reasonably likely to benefit the debtor's estate; or necessary to the administration of the case"). In the context of a bankruptcy case, the amount in controversy and results obtained necessarily require more than a focus on the raw monetary aspects and must incorporate the achievements toward successful case completion.

Both Mr. Cox and Mr. Lamey myopically assess that the "size of this case" should dictate the fee awarded here since the Debtor's only asset was a single-family home. Inherent in his cross-examination of Ms. Beran and closing argument, Mr. Cox pleads with the Court to determine the proper hourly rate and overall attorney fee as it relates to cases that are identical in asset type, though he does so without an offer of legal support. Ms. Beran, on the other hand, gave detailed testimony, based on significant and meaningful bankruptcy practice experience.

---

[64] *See* n.33, *supra*.

Ms. Beran further emphasizes that Subchapter V cases require a holistic evaluation of the issues at stake in a particular case to determine the appropriate fee, rather than an examination of the specific asset(s) involved or nature of the debtor's business. The Court agrees with Ms. Beran's testimony that fees can vary greatly depending upon all attendant facts and circumstances of a case.

Regarding the result obtained, based upon the statements of Mr. Cox, the Debtor's goal was always to sell the Property. *See, e.g.*, Feb. Tr. at 12, 14, 43-44; Apr. Tr. at 9. In that sense, the Debtor succeeded, although it was the Chapter 7 Trustee, not the Debtor, that ultimately brought the sale to the Court for approval. However, that alone does not mean that Mr. Lake's efforts throughout his representation of the Debtor were for naught. This case showed the positive and substantial progress expected by this Court in a Subchapter V case for several months. The Debtor met its monthly reporting requirements; filed a plan; and sought approval to sell the Property to effectuate its liquidation plan, all within the deadline requirements and expectations of the Court. Had the proposed buyer maintained their purchase financing, the Debtor would have likely achieved its goal.[65] Even after this setback, Mr. Lake supported the Debtor as it persevered by defending a motion for relief from stay from the Property's lender and filing an application to employ a real estate agent.

Mr. Lamey makes particular comment on the utility and result of the application to employ a real estate agent on behalf of the Debtor. He argues for a discount or elimination of the fees related thereto if the Court finds Mr. Lake to blame for failing to consummate the employment. Based upon her knowledge and experience, Ms. Beran found the work performed on the real estate agent application to be reasonable and necessary under the *Johnson* factors.

---

[65] *See* n.26, *supra* (regarding denial of plan confirmation).

The Court finds no basis in the record of this case, including the evidence adduced at the hearing on the Application and a review of the application to employ the real estate agent, to diminish or wholly preclude Mr. Lake's fees related to this task. Mr. Lake's unrebutted testimony is that he was instructed by Mr. Cox on behalf of the Debtor to cease work on the case, which would have included further prosecution of the real estate agent application. When the Court did receive the order on the application, the case had been converted to one under Chapter 7. It was then the purview of the Chapter 7 Trustee to determine how to administer the Property. It was not the Court's prerogative to foist upon the Chapter 7 Trustee a real estate professional whom he did not select.[66]

The Court finds that Mr. Lake's performance in this case was not deficient, as exhibited by these and the numerous other efforts he undertook on behalf of this Debtor. The results obtained on behalf of the Debtor are not insignificant, even if they did not ultimately result in a confirmed plan. Rather, all of the services Mr. Lake rendered were necessary to and furthered the administration of the bankruptcy case and could be accomplished only with the assistance of and by competent legal counsel. Further, the Court finds that the facts, circumstances, and issues of the case that Mr. Lake addressed on behalf of the Debtor reinforce the appropriateness of the fees requested. Accordingly, there is no justification to reduce the attorney fee sought pursuant to this factor. *See Vaughn*, 671 B.R. at 710 (citing *In re Digerati Techs., Inc.*, 537 B.R. 317, 338-39

---

[66] Ultimately, the Chapter 7 Trustee sought and obtained Court approval to employ the same real estate agent the Debtor earlier sought to employ. ECF No. 128, Order to Employ Agent, entered Apr. 4, 2025 (approving Chapter 7 Trustee's request to employ Xavier Bryan of EXP Realty, LLC); *compare* ECF No. 115, Motion to Employ, filed by Chapter 7 Trustee Mar. 4, 2025, *with* ECF No. 67, Application to Employ Real Estate Agent, filed by Debtor, by counsel, Nov. 13, 2004 (seeking to employ Mr. Bryan as real estate agent while case was pending under Subchapter V of Chapter 11).

(Bankr. S.D. Tex. 2015)) (finding that deficient performance by counsel can justify a lower fee award).

### 9. The Experience, Reputation, and Ability of the Attorney

The ninth *Johnson* factor can be evaluated in concert with the requirement of Section 330(a)(3)(E) that the Court consider whether the professional seeking compensation has "demonstrated skill and experience in the bankruptcy field." *See Johnson*, 488 F.2d at 718-19. Neither Mr. Cox, on behalf of the Debtor, nor Mr. Lamey spoke to Mr. Lake's experience, reputation, or abilities. Ms. Beran testified that Mr. Lake is a reputed lawyer in the bankruptcy community, known for his sound counsel and diligent, zealous representation of his clients. At the initial hearing on his Application in February, Mr. Lake represented that he has focused his legal practice on bankruptcy for over thirty years, during which time he has represented a variety of parties, including debtors, creditors, trustees, and other parties in interest, as well as served as lead counsel in more than 150 adversary proceedings. Feb. Tr. at 57-58. Indeed, according to the Court's records, Mr. Lake has appeared before the undersigned and his judicial colleagues in more than 1,200 cases under various chapters of the Bankruptcy Code since 1993. The Court is not aware of any negative reputational observations concerning Mr. Lake. That the Debtor did not ultimately achieve plan confirmation does not, based upon the record of this case, negatively reflect on Mr. Lake's abilities. Rather, the Court finds that Mr. Lake's abilities in this case exhibit the requisite competencies necessary to professionally, effectively, and successfully counsel Chapter 11 Subchapter V debtors and further concludes that Mr. Lake so performed here. Based upon the evidence presented and the Court's review of the record, the Court finds Mr. Lake has abundantly demonstrated his bankruptcy skill, and his experience, reputation, and ability bolsters the fee request.

10. The Undesirability of the Case Within the Legal Community

The Court is unconvinced that the undesirability of the instant case impacts the potential fee award. Mr. Lake offered no response or testimony on this point, nor did his expert witness. Nothing in the record indicates this was either an undesirable case or that the Debtor experienced any difficulty obtaining counsel. Accordingly, the Court finds the tenth *Johnson* factor does not influence the analysis of reasonableness of attorney fees here.

11. The Nature and Length of the Professional Relationship Between the Attorney and Client

There is no evidence of any prior attorney-client relationship between Mr. Lake and the Debtor or Mr. Cox. Therefore, this factor does not affect the Court's fee analysis.

12. Attorney Fee Awards in Similar Cases

The final *Johnson* factor requires the Court to examine the reasonableness of the fee in comparison to similar cases. Within the context of this analysis, the Court will also consider the statutory mandate under Section 330(a)(3)(F) to examine compensation "charged by comparably skilled practitioners in cases other than cases under this title."

Mr. Cox insists that other Subchapter V cases involving single-family homes provide the appropriate metric to determine whether a proper amount of compensation is sought here but provides no legal basis or factual evidence to support this contention. Mr. Lamey opines that $15,000.00 constitutes a "fair and equitable" award based upon the "size of this case, the work performed, and . . . a review of the docket."[67] Letter, at 3. Mr. Lamey further comments that Mr. Lake under-utilized "lower billing staff," opting instead to perform most tasks himself. *Id.* Mr. Cox adopts both of Mr. Lamey's arguments.

---

[67] For the reasons stated in Section III.B.1, *supra*, Mr. Lamey's statement does not constitute evidence.

56

Mr. Lake submits Ms. Beran's opinion in support of the compensation request. Taking into account five critical *Johnson* factors (time and labor required; novelty and difficulty of the questions presented; the requisite skill to properly represent the Debtor; the customary fees; and the instant factor of awards in similar cases) and based upon the totality of the circumstances the Debtor faced, Ms. Beran concludes that the total fee of $38,823.50 is reasonable. She further comments that the services provided were necessary to further the Debtor's objectives in this case in light of the circumstances it faced—rather than the "size of this case" or asset-type approaches advocated by Mr. Cox.

The Court's review of Mr. Lake's time records *en toto* reveals that the fees requested are reasonable and that Mr. Lake has substantiated the twelfth *Johnson* factor and fulfilled the statutory requirement set forth in Section 330(a)(3)(F). While this Court evaluates fee applications only in cases under Title 11, its general knowledge of attorney fees leads it to conclude that, for a practitioner of Mr. Lake's caliber and level of experience in today's legal markets, an hourly fee of $495.00 results in an overall fee that is reasonable for the work performed in this case. Accordingly, when compared to fee awards in similar cases, there is no basis to reduce the amount requested in the Application.

### 13. Additional Considerations

#### a. The Exercise of Billing Judgment

Billing judgment represents a lawyer's voluntary reduction of fees that confer negligible benefits or represent excessive fees. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *In re Vernon-Williams*, 377 B.R. 156, 192 (Bankr. E.D. Va. 2007) (citing *In re Maxine's, Inc.*, 304 B.R. 245, 249 (Bankr. D. Md. 2003); *In re Great Sweats, Inc.*, 113 B.R. 240, 242-44 (Bankr. E.D. Va.

1990)). "A fee application must indicate the exercise of 'billing judgment' by disclosing the number of hours 'written off' of the requested fee." *Id.* (quoting *In re Maxine's*, 304 B.R. at 249).

Mr. Lamey indicates, as discussed in the context of the first *Johnson* factor, that Mr. Lake devoted excessive time to certain tasks. To the extent such argument could be interpreted as Mr. Lake's failure to exercise billing judgment on those tasks, the Court incorporates herein its findings and conclusions from Section III.C.1, *supra*. Mr. Lamey further declares that Mr. Lake should not have charged and/or should have reduced his fees for two (2) time entries totaling 0.7 hours for email correspondence with Mr. Cox and two (2) additional entries totaling 1.4 hours for work related to the Debtor's application to employ a real estate agent. Letter, at 2-3. As to the latter, the Court incorporates its discussion concerning the true basis for the Debtor's failure to move forward on the application to employ the real estate agent from Section III.C.8, *supra*, and for those reasons, does not fault Mr. Lake's declination to exercise billing judgment on such task. As to the email correspondence entries, the Court finds Mr. Lake's detailed explanation supports the time entries for those tasks. To mandate that attorneys refrain from charging their clients for a necessary and integral function of representation—communication with the client—denigrates this crucial aspect of the attorney-client relationship, particularly where the communications pertained to many of the requirements a debtor must fulfill in exchange for the protections of the Bankruptcy Code. The Court will not countenance such approach.

Mr. Lamey, and by extension, Mr. Cox, fails to acknowledge the billing judgment exercised by Mr. Lake. Of the 83.7 hours of Mr. Lake's time reflected in the Application, he charged 50% of his hourly rate for 4.8 hours for his roundtrip travel between Richmond and Norfolk, Virginia, to attend hearings before this Court, which the Court finds appropriate considering Eastern District of Virginia precedent. *See, e.g.*, *Miller v. Mormando*, Civil Action

No. 2:23-cv-371, 2025 WL 242535, at *4 (E.D. Va. Jan. 17, 2025) (citing *Prison Legal News v. Stolle*, 129 F. Supp. 3d 390, 403-04 (E.D. Va. 2015), *aff'd per curiam*, 681 F. App'x 182 (4th Cir. 2017) (unpublished decision)) (reducing hourly attorney fee by 50% for travel time); *Larsen v. AR Res., Inc.*, 453 F. Supp. 3d 849, 853 (E.D. Va. 2020) (citing *Prison Legal News*, 129 F. Supp. 3d at 404; *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012)) (reducing travel time fees by 50%); *Prison Legal News*, 129 F. Supp. 3d at 403-04 (citing *Project Vote*, 887 F. Supp. 2d at 716) (finding that failure to reduce hourly rate for travel time exhibited lack of billing judgment and determining that 50% reduction in counsel's appropriate fee for travel time was warranted). Further, he did not bill for 4 hours, which tasks include certain email correspondence with the client, the Subchapter V Trustee, and United States Trustee's Office; and tasks related to his Motion for Leave to Withdraw as Counsel. All said, this comprises 10.5% of his total time billed, and a voluntary reduction of $3,168.00 in fees (or 7.5%). While billing judgment is not purely a mathematical exercise, the dollar amounts and percentages provide context for the voluntary reduction taken. Mr. Lake's time entries fall within the range of appropriate time for the individual tasks such that the Court finds he has exercised satisfactory billing judgment, based upon the above discussion and a review of the time records considering all of the circumstances of the case.

b. Reimbursement of Expenses

The Application seeks reimbursement of expenses of $1,155.75. The expenses, properly detailed and itemized as part of Mr. Lake's time records, are those typically incurred by counsel, including filing fees, photocopies, postage, PACER charges, and travel costs. Time Records, at 13, 16, 36; *see also* ECF No. 32 (fee of $34.00 for the filing of amended schedules); ECF No. 39 (fee of $199.00 for the filing of the motion to sell). On behalf of the Debtor, Mr. Cox has lodged

no objection to the reimbursement of the documented expenses. The Court finds these expenses were actual and necessary for the Debtor's representation, as their expenditure enabled Mr. Lake to competently and effectively represent the Debtor. Accordingly, the Court finds that the full amount of the expenses incurred representing the Debtor should be awarded.

## IV. Conclusion

Underlying Mr. Cox's criticisms of the Application for Compensation appears to be the proposition that the value of the Property (here, a single-family residence) should somehow dictate the amount of attorney fees awarded. He relies solely on an unattested letter in support of his cause. While emphatic in these adopted positions, Mr. Cox offers no evidence in support of the argument that the compensation sought is not reasonable. Conversely, Mr. Lake has met his evidentiary burden by submitting unrefuted expert witness testimony to substantiate the reasonableness of his hourly rate, as well as the reasonableness and necessity of undertaking the tasks represented both by the nineteen (19) Contested Entries and contained in the Application as a whole. Despite Mr. Cox's entreaties to reduce the analysis of the attorney fees to a single consideration—those approved in cases with similar asset types and quantities—the discussion herein makes clear that proposition is fraught with legal and practical shortcomings.

It is undisputed that Mr. Cox selected Mr. Lake to represent the Debtor with full awareness and knowledge of Mr. Lake's hourly rate and presumably did so based upon Mr. Lake's reputation as capable, effective bankruptcy counsel. It is also undisputed that the Debtor, by Mr. Cox, voluntarily elected to file this case under Subchapter V of Chapter 11. The Debtor presumptively made this decision for the purpose of retaining control over the administration of the estate property and its liquidation. To accomplish this goal, certain tasks were needed to maintain the case. With Mr. Lake's advice and advocacy, the Debtor succeeded at meaningful

efforts toward completion of its case. The ultimate conversion of the case, which occurred through no fault by Mr. Lake and was unobjected to by the Debtor, lead to the eventual sale of the Property by the Trustee at the contract price originally procured by the Debtor. Therein lies the gravamen of Mr. Cox's contention: a reduced residual amount to the Debtor after accounting for fees and costs of the sale and associated with this bankruptcy case. While the Court appreciates this pecuniary position, such is the risk of receiving the benefit of the protection of this Court.

The Court has meticulously examined the Application for Compensation and accompanying, contemporaneously kept, detailed time records; considered the explanations of Mr. Lake and the supporting expert witness testimony; and given great contemplation to Mr. Cox's objections. Mr. Lake has sustained the burden to show that the fees requested reflect reasonable compensation for actual and necessary services undertaken in the representation of the Debtor. For the reasons stated above, the Court finds that the Debtor's Objection should be overruled and the Application for Compensation should be approved in its entirety, including the fee request of $38,823.50 and reimbursement of expenses of $1,155.75, for a total award of $39,979.25. The Court further finds that authorization should be given to apply the remaining, unapplied prepetition retainer of $657.00[68] to the total award here. Further, the Court finds that the approved compensation, less the unapplied prepetition retainer, should be treated as an allowed administrative claim in the case, to be administered and paid by the Chapter 7 Trustee in accordance with his statutory duties.

A separate Order will be contemporaneously issued consistent with this Memorandum Opinion.

---

[68] *See* n.13, *supra*.

The Debtor is advised that an appeal lies from this matter to the United States District Court for the Eastern District of Virginia. Except as provided in Federal Rules of Bankruptcy Procedure 8002(b)-(d), any notice of appeal must be filed with the Clerk of this Court within fourteen (14) days of the date of entry of the Order memorializing the Court's ruling. The filing fee for a notice of appeal is $298.00.

The Clerk shall mail a copy of this Memorandum Opinion to the Debtor; the debtor designee, Marc A. Cox; Kevin A. Lake, Esquire, McDonald, Sutton & Duval, PLC, 5516 Falmouth Street, Suite 108, Richmond, Virginia 23230; the Chapter 7 Trustee; and the Office of the United States Trustee.

IT IS SO ORDERED.

Entered this **4th day** of **November, 2025**, at Norfolk, in the Eastern District of Virginia.

/s/ Stephen C St-John

STEPHEN C. ST. JOHN
United States Bankruptcy Judge

Entered On Docket: Nov 4 2025